**Willis ATTOCKNIE, Plaintiff,**

**v.**

**Stewart L. UDALL, Secretary of the Interior, Defendant.**

**Civ. No. 66–316.**

United States District Court
W. D. Oklahoma.

Dec. 24, 1966.

Durward K. McDaniel, Oklahoma City, Okl., David Cobb, Washington, D. C., Darrell Winings, Oklahoma City, Okl., for plaintiff.

Herbert Pittle, Dept. of Justice, Washington, D. C., Robert L. Berry, Asst. U. S. Dist. Atty., Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

EUBANKS, District Judge.

The plaintiff, a Comanche Indian who alleges himself to be an illegitimate son, was disinherited by the last will and testament of Albert Attocknie, deceased Comanche Indian Allottee No. 532, by the following testamentary provision: "I leave nothing to Willis Attocknie because he is not my son." The Secretary of the Interior approved the will. Plaintiff brought this action for judicial re-

view under Section 10 of the Administrative Procedure Act [1] seeking to have the decision of the Secretary set aside.

The averments of the complaint assign the customary reasons for the setting aside of an agency determination, namely that the Secretary's decision was arbitrary and capricious, that it represented an abuse of administrative discretion, that it was made in excess of statutory authority, is contrary to the evidence and law, and is violative of the due process provisions of the United States Constitution. The actual basis asserted for this action, however, is according to the clear import of the complaint, that the decision complained of was contrary to the evidence and the law relating to the decedent's testamentary capacity at the time of the making of the will in that he was at that time suffering from an insane delusion as to the existence of his natural child and was thereby mentally incapable of making an effective will disposing of his property, and by reason thereof the will is void and the estate should be distributed according to the law of descent and distribution of the State of Oklahoma.

The decedent was the recipient of a Comanche Indian allotment made in accordance with the provisions of the General Allotment Act of February 8, 1887.[2] During his lifetime his allotted lands were, and continue at this time to be, held in trust by the United States in accordance with the provisions of that act. Additionally, he was the beneficial owner of other Indian lands, similarly allotted and held in trust, which he had acquired by inheritance. He died on December 5, 1962, leaving a will by which he devised all of his trust estate to his four legitimate children.

A hearing was held by a hearing examiner of the Department of the Interior on April 11, 1963, after due notice in accordance with the regulations of the Secretary,[3] for the purpose of ascertaining the heirs at law of the decedent and the facts and circumstances surrounding the execution of the last will and testament.[4] The complaint does not allege the existence of any procedural defects.

On May 3, 1963, the examiner, acting pursuant to delegated authority, entered his order approving the will and decreeing distribution of the estate in accordance with its provisions. In that order the examiner determined and found that: "The evidence shows that the will was prepared by a private attorney in or near Oklahoma City, at the home of the decedent's son, Francis Joseph Attocknie, and appears to meet all the requirements of the Department for a valid instrument. Both attesting witnesses testified that the will was properly made and ex-

---

1. 60 Stat. 240 (1946), 5 U.S.C.A. § 1009.

2. 24 Stat. 388. The act provides, *inter alia*, that the United States shall hold the lands in trust for the allottee during the existence of the trust period or any extension thereof, or, in case of his decease, for his heirs.

3. The applicable regulations of the Secretary of the Interior are set out in Part 15 of 25 C.F.R. (1958 Ed.).

4. The authority of the Secretary of the Interior to approve wills of Indians owning allotted lands is contained in the Act of June 25, 1910, 36 Stat. 856, as amended by the Act of February 14, 1913, 37 Stat. 678, 25 U.S.C. § 373, which provides, in part, that any Indian, except members of the Five Civilized Tribes or of the Osage Tribe, over the age of twenty-one years having any right, title or interest in any Indian lands or moneys held in trust by the United States or restricted upon alienation shall have the right to dispose of such property by will in accordance with regulations to be prescribed by the Secretary of the Interior. It further provides that such a will shall not be valid nor have any force or effect unless it shall have been approved by the Secretary of the Interior; that the Secretary may approve or disapprove the will either before or after the death of the testator and where such a will has been approved and it is subsequently discovered that there was fraud in connection with the execution or procurement thereof, the Secretary of the Interior within one year after the death of the testator may cancel the approval of the will, and the property of the testator shall thereupon descend or be distributed in accordance with the laws of the state wherein the property is located.

ecuted by the decedent when he was of sound and disposing mind and memory and not acting under undue influence, fraud, duress or coercion. Willis Attocknie objected to the will on grounds of lack of mental capacity and possible undue influence. However, his evidence is insufficient to overcome the evidence offered in support of the will."

On July 2, 1963, the plaintiff filed a petition for rehearing, asserting as a basis therefor that the decedent was not of sufficient testamentary capacity on August 1, 1961, to make a valid last will and testament because he was at that time suffering from an "insane delusion" that the petitioner was not his son. Plaintiff's petition was granted and a rehearing was held on June 29, 1964. On January 29, 1965, the hearing examiner entered an additional order which affirmed his original decision approving the will.

Thereafter, in accordance with the applicable regulations, the plaintiff appealed from the orders of the hearing examiner to the Secretary of the Interior. Faith Attocknie Blackowl and Paul Attocknie, children of the decedent and beneficiaries under the will, similarly appealed to the Secretary from those parts of the examiner's orders of May 3, 1963 and January 29, 1965 which found that the plaintiff, Willis Attocknie, was the decedent's illegitimate son. On February 7, 1966, pursuant to authority delegated to the Solicitor of the Department of the Interior and redelegated to the Associate Solicitor, a Departmental determination was made which affirmed the examiner's decisions approving the will and which dismissed the appeals. Plaintiff thereupon filed this action.

Both the defendant and the plaintiff appeared by motions for summary judgment. Both have presented supporting briefs. The defendant's motion is predicated primarily upon the proposition that this Court is without jurisdiction to set aside the decision of the Secretary for the reason that the actions taken were within the scope of his authority and are therefore final and conclusive. Plain-

tiff's motion is, in essence, based upon the contention that the evidence presented at the hearings required a finding that the decedent lacked testamentary capacity by reason of the existence of an insane delusion and, there being a lack of the requisite mental capacity to make a valid will, the Secretary is without power to grant it approval, and this Court must therefore set aside such approval. The contentions of the parties are in direct conflict with respect to whether or not the evidence adduced by the hearing examiner supported a finding that the decedent, on the date he made his will, was in fact suffering under the insane delusion which the plaintiff asserts existed.

A review of the hearing record compels the conclusion that the decedent and plaintiff's mother were never married. While there was conflicting testimony upon the question of plaintiff's paternity, the record contains considerable evidence to the effect that the decedent and plaintiff's mother consorted together frequently during the period of conception, and there is little in the record to indicate that plaintiff's mother consorted with any other man during that time. Based upon the record, the conclusion can be reached that the decedent was probably the plaintiff's father. The hearing examiner so found him to be. The record reflects that the proponents of the will highly disputed such finding. No issue has been raised in this action, however, as to the correctness or incorrectness of that finding. The examiner's conclusion, in which the Secretary's decision concurred, was that there was insufficient evidence in the record upon which to base a finding of the existence of the alleged insane delusion, and that, therefore, there was no lack of testamentary capacity.

■■ This Court is not in agreement with the defendant's contention that the Secretary of the Interior's approval of an Indian will, when acting within the scope of his statutory authority, is final and conclusive so as to preclude judicial review. Admittedly there is authority

for that view, as has been cited. In support of that position the defendant relies upon the rule enunciated in Hanson v. Hoffman, 113 F.2d 780, 789 (10th Cir. 1940), and the decisions cited therein. This Court prefers the view expressed in the later decision of Homovich v. Chapman, 89 U.S.App.D.C. 150, 191 F.2d 761 (1951), wherein it was stated:

" * * * The Secretary argues that, because Section 1 of the 1910 Act, dealing with the determination of the heirs of an Indian who dies without a will, provides that his determination 'shall be final and conclusive' therefore Section 2 of that Act, dealing with wills, must be read as though it contained a similar provision, although in fact it does not. We think it plain that, if Congress had meant that the decisions in Section 2 should be final and conclusive, it would have said so; in the immediately preceding paragraph it had so provided when it meant to do so. The mere fact that the acts of the Secretary in providing regulations for the execution of these wills and in approving them, required the exercise of discretion and judgment on his part, does not preclude judicial review of his action. To be sure, if upon such review it appears that his action was within the scope of the authority conferred upon him, the court cannot disturb his decision. But that is a different rule from the rule of total non-reviewability. The Administrative Procedure Act (Section 10) forbids judicial review only where statutes 'preclude' such review or where agency action is 'by law committed to agency discretion.' No statute 'precludes' this review, and the Secretary would have us stretch the second prohibitory clause far beyond its meaning. * * * "

This court agrees with the plaintiff that it has jurisdiction to review the determinations of the Secretary and his hearing examiner which approved the decedent's will in order to ascertain whether or not, based upon the whole record of the administrative proceedings, there existed a basis upon which those determinations could reasonably have been made.

■ I believe it to be a well settled rule that factual determinations by the Secretary of the Interior in administrative proceedings, in the absence of fraud, are conclusive when supported by substantial evidence. Best v. Humboldt Placer Mining Company, 371 U.S. 334, 83 S.Ct. 379, 9 L.Ed.2d 350 (1963); Cameron v. United States, 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659 (1920); Foster v. Seaton, 106 U.S.App.D.C. 253, 271 F.2d 836 (1959); Noren v. Beck, 199 F.Supp. 708 (S.D.Cal.1961). Therefore, the function of this Court is limited to a review of the administrative record relating to the approval of the decedent's will in order to ascertain whether or not the Secretary and his hearing examiner could reasonably have reached a determination that the decedent was possessed of the necessary testamentary capacity to have made a valid will.

■■ There can be no question of this Court substituting its determination for the discretionary authority of the Secretary, for this it clearly cannot do. The task of the reviewing court is not to guarantee the correctness of the administrative decision so long as the decision is supported by competent evidence based on the whole record. In other words, the only question this Court may answer on review is whether, on the record, the Secretary, acting through his delegated agents, could reasonably have made the findings and reach the conclusions which were made. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). This view is supported by Hayes v. Seaton, 106 U.S.C.App.D.C. 126, 270 F.2d 319, 321 (1959), wherein the court said:

"Since the Secretary's decision that the son survived the father was an essential part of the Secretary's 'final and conclusive' ascertainment of the son's legal heirs, it was a final and conclusive decision. It determined who

took the son's property and also who took the father's property. We think it was final and conclusive for both these purposes. *Even if it were reviewable and in our opinion erroneous, we could not disturb it, for it was not arbitrary or unreasonable. 'The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.'* Rochester Telephone Corp. v. United States, 1939, 307 U.S. 125, 146, 59 S.Ct. 754, 83 L.Ed. 1147." (Emphasis supplied.)

It has heretofore been pointed out that the authority of the Secretary of the Interior to approve Indian wills is contained in 25 U.S.C. § 373.[5] The statute permits an Indian to dispose of his trust or restricted property by will in accordance with regulations to be prescribed by the Secretary of the Interior. The Secretary has provided such regulations. Of particular pertinence to the question now under consideration is 25 CFR 15.12, the provisions of which are as follows:

"No action shall be taken on the will of a deceased Indian until testimony shall have been taken as to the testamentary capacity of the decedent to execute the will and as to the circumstances surrounding its execution. A reasonable effort shall be made to procure the testimony of the attesting witnesses to the will; or, if their testimony is not reasonably available, an effort shall be made to identify their signatures through other evidence."

Also of significance to this inquiry is 25 CFR 15.28(a), which provides as follows:

"(a) An Indian of the age of 21 years and of testamentary capacity, who has any right, title, or interest in trust or restricted property, may dispose of such property by a will executed in writing and attested by two disinterested adult witnesses."

Thus it can be seen that the Secretary of the Interior, by his own probate regulations, has prescribed the requirement that there must be testamentary capacity. Under those regulations an Indian will is not subject to secretarial approval where a finding has been made of a lack of such capacity. The decedent, Albert Attocknie, was not found by the hearing examiner to have lacked that requisite testamentary capacity at the time he made the will upon which the administrative determination was made, and that finding was affirmed upon appeal to the Secretary. Plaintiff contends that the decedent's testamentary provision that "I leave nothing to Willis Attocknie because he is not my son" conclusively proves, on its face, that the decedent was possessed of an insane delusion and therefore could not have been found, under the decisions of the Oklahoma Supreme Court and other authority, to have been of testamentary capacity. Under the plaintiff's theory, once the hearing examiner had made a finding that the plaintiff was the decedent's illegitimate son, a rule somewhat similar to the tort doctrine of res ipsa loquitur automatically applies in circumstances where the decedent had included a statement in his will by which he denied plaintiff's paternity. Counsel has not cited, nor has this Court been able to find, authority for the application of such a narrow rule.

An insane delusion was defined by the Supreme Court of Oklahoma in the case of Winn v. Dolezal, 355 P.2d 859, 861 (1960), as follows:

"An 'insane delusion', within rule invalidating will, denotes a false belief, which would be incredible in the same circumstance to victim thereof were he of sound mind and from which he cannot be dissuaded by any evidence or argument."

Plaintiff contends that the application of the foregoing definition to the circumstances surrounding the execution of decedent's will, coupled with the testimony of witnesses to the effect that the decedent had recognized and treated the plaintiff as a son over a long period of time, compelled an administrative finding of

5. Act of June 25, 1910, 36 Stat. 856, as amended by the Act of February 14, 1913, 37 Stat. 678.

the existence of the alleged insane delusion.

In commenting upon the foregoing definition in his finding and order, the hearing examiner stated:

"Nothing could be clearer or simpler than this rule; an insane delusion is not merely an erroneous belief. The belief must not only be wrong, it must be unreasonable. It must defy rational explanation or justification. Stated another way, it must be such that only a person with a deranged or abnormal mind would believe that the 'insane delusion' represented the truth or was correct.

In reality, the petitioner's entire case rests on only the following language in the will: 'I am leaving nothing to Willis Attocknie because he is not my son', plus the original findings in these proceedings that Willis Attocknie, Sr. was a son of the testator. After an extensive rehearing, no evidence has been found which sheds any additional light on this question. While the petitioner attempted to shift the burden of proof to the proponents of the will to explain a purported change of attitude by the testator, this added nothing to his objection to the will. The undersigned does not know, and is not interested in determining if the decedent's views changed during his life on this paternity question. It is immaterial and, does not, in any way, reflect adversely on the decedent's mental capacity, or suggest that he was suffering from an insane delusion. In the absence of proof of a recognized marriage between the parents of Willis Attocknie, Sr., there are no presumptions of paternity involved here. The decedent was free to change his views any number of times on this paternity question for a multitude of reasons which would be plausible, reasonable and understandable. Thus, proof of a change of attitude is not even evidence of an insane delusion.

Further, it is equally absurd to suggest that the inconsistency between the language in the will and the original findings of fact tends to prove an 'insane delusion'. If all of the evidence had been clear and unequivocal that Willis Attocknie, Sr. was the decedent's son, this might cause one to look more carefully at the reasons for the testator's views. However, this is not the case, the original findings of paternity are based on highly disputed evidence, and there were a substantial number of witnesses who did not believe that this relationship existed. A finding that the petitioner was not a son of this decedent could, in my opinion, be sustained by the evidence now in the record. Under these circumstances the petitioner has failed to prove the first basic element of an 'insane delusion'. He has failed to establish a false belief. When, as in this case, there is good reason for an honest difference of opinion on facts that are extremely difficult to establish, no single conclusions by any one person is sufficient to hold that opposing views are 'false'. There are innumerable reasons which are logical, understandable and sensible for the testator's beliefs as to the paternity of Willis Attocknie, Sr.

If, as indicated above, the petitioner has completely failed to prove that the testator's belief was false, there seems to be no useful purpose in exploring the possibility that it was the product of an unsound mind. There is no other evidence whatsoever of lack of mental capacity to make a will at the time this instrument was executed. The evidence, taken in its entirety, fails to even suggest mental abnormality or an insane delusion."

The Supreme Court of Oklahoma, in Robertson v. Robertson, 199 Okl. 582, 189 P.2d 615 (1948), found the existence of an insane delusion based upon a statement contained in the decedent's will denying paternity of certain of his children. The question presented in that decision is not analogous to the question considered by the Secretary for at least two reasons. First, the children were born during a valid, recognized and undisputed marriage between the parents. Second, and more important, no one other than the decedent ever seriously ques-

tioned the paternity. The court stated with respect to the evidence in that regard that "all the evidence is that Dean Robertson and Helen Pope are the children of the marriage between testator and his first wife, Elizabeth."

Plaintiff's brief in support of his motion for summary judgment places considerable emphasis upon the decision of the Oklahoma Supreme Court in the case of Winn v. Dolezal, supra. In that case there was a sound basis for the testator's belief that the children referred to were not his. On page 862 of 355 P.2d the court said:

"There was also testimony that testator had stated his wife told him at the time of the divorce that Rudolph, Edward and Evelyn (the contestants) were not his children, but that Clarence was the only child fathered by him."

Plaintiff suggests that it would be difficult to imagine a more persuasive source of a denial of paternity than the words of the natural mother. Again, the factual situation presented in that case is dissimilar from the factual situation which the Secretary was obliged to decide because the children were born to the parents during wedlock and therefore are presumed to be the lawful issue of the husband and wife.

The circumstances surrounding the denial of paternity by Albert Attocknie in the matter now under consideration are entirely different. The decedent and plaintiff's mother were never married. Counsel has not cited, nor has this court been able to find, any decisions or other authority for holding that an affirmative denial of paternity by a putative father of an illegitimate child evidences the existence of an insane delusion. There is some evidence in the record that Albert Attocknie's views had changed over the years as to his paternity of the plaintiff. If there is a rational explanation for the testator's views on that question, then, even under the rule of both the Winn and the Robertson decisions, those views,

standing alone, are not conclusive evidence of an insane delusion.

Based on the simplest and most logical assumption of facts, this court could suggest numerous reasons why he might have acknowledged or denied paternity at any time over the years. The birth having been an illegitimate one, it is quite possible that no one, including the mother of the plaintiff, was absolutely certain as to the identity of the father. The mother was never bound by any vows of fidelity to the decedent. Under such conditions, it would be just as logical to assume that the hearing examiner was suffering from an insane delusion in finding that the plaintiff was this decedent's son as it would be to assume that the testator was suffering from an insane delusion because he did not share that conclusion. The examiner's findings as to the paternity of a child born out of wedlock creates no presumption that such conclusion is either correct or is universally shared, or that it was shared by the putative father. Under such circumstances there always exists some element of doubt.

■ Plaintiff additionally contends that 25 U.S.C. § 371 [6] requires that an illegitimate Indian child must be recognized as the heir of its natural father. This court is unable to arrive at that interpretation. The purpose of the statute is to legitimate the children of Indian parents who have cohabited together as husband and wife according to the custom and manner of Indian life, under circumstances where there has been no valid marriage consummated under appropriate law.

■■ There is a presumption of validity which accompanies every last will and testament. After having reviewed the administrative record, being mindful of the factual situation as it existed with respect to the relationship of the plaintiff and the decedent, and upon consideration of all the testimony which was taken by the hearing examiner, this Court must hold that there was substantial evidence

6. Act of February 28, 1891, 26 Stat. 795.

that the testator was, at the time the will was executed, of sound mind and disposing memory, that such evidence was sufficient to support an administrative determination that there was no lack of testamentary capacity, that the decedent's denial of paternity of a child born out of wedlock is not sufficient, standing alone, to prove the existence of an insane delusion, and that the plaintiff had failed to overcome the presumption of the validity of the will. This Court must therefore hold that the administrative decision was based upon substantial evidence and accordingly cannot be said to have been arbitrary or capricious.

Lastly, the plaintiff alleges the testator to have been subject to undue influence at the time the will was executed. Considered in its best light, the evidence to that effect is largely circumstantial and is insufficient to overcome the presumption that the will is valid.

I find, and hold accordingly, that the complaint here fails to state a claim on which relief can be granted, and that it cannot be amended to state a claim upon which relief can be granted. The motion of plaintiff is denied, and the complaint and the action are dismissed with prejudice.

Judgment to that effect will be entered.