Viola **ATEWOOFTAKEWA** (Tate), **Frankie Lee Tooahnippah, Vila Tooahnippah, and Julia Tooahnippah (Goombi), Plaintiffs,**

v.

**Stewart L. UDALL, Secretary of the Interior for the United States of America, Defendant,**

**Dorita High Horse, Intervenor.**

No. 67–323.

United States District Court
W. D. Oklahoma.
Dec. 18, 1967.

Omer Luellen, Hinton, Okl., for plaintiffs.

Robert L. Berry, Asst. U. S. Atty., United States Department of Justice, Oklahoma City, Okl., for defendant.

Houston Bus Hill, Oklahoma City, Okl., for intervenor.

## MEMORANDUM OPINION

EUBANKS, District Judge.

 The plaintiffs are Comanche Indians who were named as beneficiaries under their deceased Comanche uncle's last will and testament which the Secretary of the Interior has declined to approve, and seek by this action to set aside the administrative decision which denied approval of the will, alleging it to be arbitrary, capricious, in excess of authority, without reasonable basis, and that it amounts to an abuse of discretion.[1] The sole basis for denying approval is that the will failed to make provision for the intervenor, who was determined by the Secretary to be the decedent's daughter born out of wedlock,

---

1. Plaintiffs have attempted to invoke jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. The decisions do not appear to be entirely in harmony as to the scope of the jurisdiction conferred by the Administrative Procedure Act to grant review of administrative decisions in actions brought against the Secretary of the Interior for that purpose. There can be no doubt but that this court has jurisdiction under 28 U.S.C. § 1361, and upon that basis jurisdiction is taken here, as it has been by this court upon other occasions, in order to effectuate the purposes of the Administrative Procedure Act by providing the review function which the act contemplates. Moreover, this court has heretofore considered and resolved to its satisfaction that there is no express limitation contained in the language of § 2 of the Indian Probate Act, infra, which precludes judicial review of Indian will approval decisions. Unlike § 1 of the act which relates to the determination of the heirs of Indians who die without having made a will, § 2 contains no language by which will approval decisions of the Secretary are made final and conclusive. See Homovich v. Chapman, 89 U.S.App.D.C. 150, 191 F.2d 761 (1951); Attocknie v. Udall, 261 F.Supp. 876 (W.D.Okl.1966).

and as such to be entitled to inherit the entire estate as decedent's sole heir in the absence of an approved will, by virtue of the provisions of 25 U.S.C. § 371.

██ Congress has granted to Indians the right to make wills, subject only to the approval of the Secretary of the Interior.[2] Such approval is requisite to validity. Lacking such approval an Indian will is totally without force and effect to dispose of the trust estate. The will which is the subject of this review has never received the required Secretarial approval and, therefore, is not a valid will; nor can it achieve the status of a valid will until such time as the approval required by the statute has been conferred. The question with which this court is concerned in the present action is whether the Secretary, in the circumstances presented, can properly withhold his approval of this will, which otherwise meets all of the requirements of a valid testamentary instrument, without such action amounting to an arbitrary denial of the decedent's statutory right to predetermine those

persons to whom his trust estate shall devolve.

The will which is the subject of the administrative decision under review in this action was made by George Chahsenah, an unallotted Comanche Indian, approximately seven months prior to his death. He died without having ever been married, and without leaving a surviving father, mother, brother or sister. He was the owner by inheritance of certain Indian property allotted in accordance with the provisions of the General Allotment Act of February 8, 1887[3] which, under the provisions of his will, was devised to a niece and her children with whom, the record indicates, he resided for a considerable portion of the later years of his life. The hearing examiner found no lack of testamentary capacity, and that the will was not the product of fraud, duress, coercion, or undue influence.[4] In accordance with the applicable regulations[5] the examiner entered an order which approved the will and decreed distribution of the estate in accordance with its provisions. A pe-

---

2. The authority of the Secretary of the Interior to approve wills of Indians owning allotted lands is contained in § 2 of the Act of June 25, 1910, 36 Stat. 856, as amended by the Act of February 14, 1913, 37 Stat. 678, 25 U.S.C. § 373, which provides, in its essential details, that any Indians, except members of the Five Civilized Tribes or of the Osage Tribe, over the age of twenty-one years having any right, title or interest in any Indian lands or moneys held in trust by the United States or restricted upon alienation shall have the right to dispose of such property by will in accordance with regulations to be prescribed by the Secretary of the Interior. It further provides that such a will shall not be valid nor have any force or effect unless it shall have been approved by the Secretary of the Interior; that the Secretary may approve or disapprove the will either before or after the death of the testator and where such a will has been approved and it is subsequently discovered that there was fraud in connection with the execution or procurement thereof, the Secretary of the Interior within one year after the death of the testator may cancel the approval of the will,

and the property of the testator shall thereupon descend or be distributed in accordance with the laws of the state wherein the property is located.

3. 24 Stat. 388. The act provides, *inter alia*, that the United States shall hold the lands in trust for the allottee during the existence of the trust period or any extension thereof, or, in case of his decease, for his heirs.

4. The administrative record discloses that the examiner held four separate formal hearings upon the decedent's will prior to the entry of his order of approval. The purpose of those hearings was to ascertain whether or not the will was entitled to receive the approval required by § 2 of the Indian Probate Act, supra. The examiner's authority to grant such approval is derived from a delegation of the Secretary's authority set out in the appropriate departmental regulations. The examiner found the will to be entitled to approval and he approved it.

5. The applicable regulations of the Secretary of the Interior are set out in Part 15 of 25 C.F.R. (1966 ed.).

tition for rehearing was subsequently filed and denied by the examiner.

The hearing examiner found the decedent to have been survived by an adult daughter, Dorita High Horse, born out of wedlock,[6] and that her mother and the decedent had cohabited together in the custom and manner of Indian life sufficiently to entitle the daughter to inherit from the decedent under 25 U.S.C. § 371. The effect of those findings is to make Dorita High Horse the decedent's sole heir at law, and thus entitled to inherit the decedent's entire estate in the absence of an approved will.

The evidence in the administrative record indicates that the decedent and Dorita High Horse never maintained the usual father-daughter relationship. Their relationship can best be described as being that of casual acquaintances. The Regional Solicitor, in his administrative decision which rescinded the examiner's approval of the decedent's will, noted that fact. He stated: " * * * The record reflects that during his lifetime the decedent's only contribution toward the welfare of his daughter was to participate in her conception, to acknowledge her status as his daughter, and to visit briefly with her on rare occasions when they would by accident meet on public streets. * * * "

Having been denied their petition for rehearing, the plaintiffs appealed to the Secretary of the Interior. Pursuant to authority delegated to the Solicitor of the Department of the Interior and re-delegated to the Regional Solicitor, the latter reviewed the record and thereupon issued his decision which reversed the hearing examiner's order and withdrew the approval of the will which had been granted by the examiner. The Regional Solicitor's action constituted a final administrative decision which exhausted the administrative remedy and led to the filing of this action for review.

The Regional Solicitor, in support of his conclusion that approval was to be denied, stated in his decision that "[W]hen a purported will is submitted for approval and it has been determined that it meets the technical requirements for a valid will, further consideration must be given before approving or disapproving it to determine whether approval will most nearly achieve just and equitable treatment of the beneficiaries thereunder and the decedent's heirs-at-law."

The import of the Regional Solicitor's views is that an inequity will result should the decedent's estate be permitted to devolve upon a niece, who had provided the decedent with a home, and to her children, and thereby is denied to a putative daughter whose relationship with the decedent was only of the most casual nature. I find difficulty in following his reasoning to that conclusion. Moreover, there is danger in that course in that it provides no recognizable standard, thereby permitting the Secretary to go as near or as far in the grant of his sanction as his sympathies may lead him, in whatever direction, and conceivably

---

6. This court has not found the evidence of the decedent's paternity nearly as convincing as did the hearing examiner and the Regional Solicitor. The evidence in that regard which is contained in the administrative record is conflicting and, in my view, could have supported a finding to the contrary. I am intrigued by the singular fact that the mother of this putative daughter, Mary High, must have suffered from an equal lack of conviction of the decedent's paternity, as evidenced by her actions at the time of Dorita High Horse's birth. She attributed paternity to a different individual, and that individual is named as the father in the birth certificate which

was prepared at the time. The only telling evidence in support of the finding is a skillfully typewritten letter, dated August 31, 1949, and obviously not prepared by the decedent, which is addressed to the Oklahoma Bureau of Vital Statistics and which is purported to be signed by the decedent, wherein it is stated that Dorita High is his daughter and that he was "perfectly willing for her to use [his] name as her name on her birth certificate or in school." The record would seem to indicate that, until she acquired the surname "Horse" as a result of her present marriage, she went by the surname of her mother.

could result in all manner of discretionary abuses.

Wills are a common feature of modern life. They are customarily made with only one purpose in view, that purpose being to alter the usual order of descent and distribution. Otherwise the act of making a will would be meaningless. The concept of the will making process is that the maker is provided with a method by which he can predetermine the persons to whom his estate shall devolve. It is not infrequent that those heirs who are not included in the will maker's bounty should appear to be victims of inequitable treatment. Equity plays no part in the will making process, as any heir who has been cut off without a dollar will vouchsafe. A will is the testator's last available means of rewarding those who have befriended him during his lifetime and for evening the score with those who have not. It must be assumed that the will maker has his reasons, and that they are valid.

Congress has conferred the will making right upon all adult Indians. The only limitation upon that right is that the will must be approved by the Secretary of the Interior. It is incumbent upon the Secretary that he not lose sight of the fact that the will making right has been conferred upon the Indian and not upon the Secretary. Surely there must be a point beyond which the Secretary cannot go in withholding his approval before his act of disapproval is to amount to an arbitrary denial of the statutory will making right.

 Where disapproval is founded upon some rational basis, denial of approval of an Indian will cannot be said to be an abuse of discretion.[7] Examples of what may constitute reasonable bases upon which approval may be denied are lack of testamentary capacity, fraud, duress, coercion, undue influence, overreaching, substantially changed conditions as to the decedent's heirs or estate occurring subsequent to the making of the will, and improvident disposition. In the decision now under review, the will was denied approval because the decedent had failed to make provision for a daughter born out of wedlock. In Attocknie v. Udall, 261 F.Supp. 876 (W.D.Okl. 1966), this court upheld a decision of the Secretary which granted approval to an Indian will in exactly opposite circumstances from those presented here. In that case approval was granted to a will wherein no provision was made for a son born out of wedlock. I am unable to perceive the distinction wherein that will was considered to be susceptible of approval but the will which is the subject of this review was not considered to be susceptible of being accorded the same treatment.

 This decedent's will was not an unnatural one in light of the circumstances. Someone has lost sight of the fact here that Congress has conferred the right to make a will upon the Indian and not upon the Secretary. The Secretary can no more use his approval powers to substitute his will for that of the Indian than he can dictate its terms. If the will making right is to be meaningful the Indian must be given a free hand to decide upon those persons who shall be the objects of his bounty without unreasonable Secretarial interference. I find that the denial of approval of the last will and testament of George Chahsenah lacks a rational basis and is an unreasonable and arbitrary denial of a right conferred upon him by Congress.

The motion of the plaintiff is granted, the motions of the defendant and the

---

7. It is a well-established proposition that administrative action must have a "reasonable" or "rational" basis if it is to avoid the stigma of arbitrariness. Securities & Exchange Commission v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); Unemployment Compensation Commission of Territory of Alaska v. Aragan, 329 U.S. 143, 67 S.Ct. 245, 91 L.Ed. 136 (1946); Dell Publishing Co. v. Summerfield, 198 F. Supp. 843 (D.D.C.1961), aff'd, 113 U.S. App.D.C. 1, 303 F.2d 766 (1962); Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260 (1934); Eastern Central Motor Carriers Ass'n v. United States, 239 F.Supp. 591 (D.D.C.1965)

intervenor are denied, and the will is remanded to the Secretary of the Interior with directions to approve it and distribute the decedent's estate in accordance with its provisions.

Counsel for plaintiff will prepare formal judgment in accordance herewith.

The Clerk will mail a copy hereof to all counsel of record.