TOOAHNIPPAH (GOOMBI), ADMINISTRATRIX, ET AL. *v.* HICKEL, SECRETARY OF THE INTERIOR, ET AL.

No. 300.   Argued January 14, 1970—Decided April 27, 1970

*Omer Luellen* argued the cause and filed briefs for petitioners.

*Richard B. Stone* argued the cause for respondent Hickel, *pro hac vice*. With him on the brief were *Solicitor General Griswold, Assistant Attorney General Kashiwa, Edmund B. Clark,* and *Robert S. Lynch. Houston Bus Hill* argued the cause and filed a brief for respondent Horse.

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted the writ to review the action of the Court of Appeals holding that the decision of the Regional Solicitor, acting for the Secretary of the Interior, disapproving the will of a Comanche Indian constitutes final and unreviewable agency action. We conclude that such decision is subject to judicial review.[1]

George Chahsenah, a Comanche Indian, died on October 11, 1963, unmarried and without a surviving father, mother, brother, or sister. His estate consisted of interests in three Comanche allotments situated in Oklahoma under the jurisdiction of the Bureau of Indian Affairs, Department of the Interior.[2] Shortly after

---

[1] The Court of Appeals decision, which held that the United States District Court for the Western District of Oklahoma had erred in reviewing the Regional Solicitor's action, is reported as *High Horse* v. *Tate,* 407 F. 2d 394.

[2] The General Allotment Act of February 8, 1887, 24 Stat. 388, as amended by Act of February 28, 1891, 26 Stat. 794, as amended by Act of June 25, 1910, 36 Stat. 855, 25 U. S. C. § 331 *et seq.,* provides, *inter alia,* for the allotment to individual Indians of parcels of land. The title to these lands is held by the United States in

Chahsenah's death, the value of those interests was fixed at $34,867. On March 14, 1963, Chahsenah had made a will devising and bequeathing his estate to a niece, Viola Atewooftakewa Tate, and her three children, these devisees or their representatives being the petitioners herein. Chahsenah had resided with this niece a considerable portion of the later years of his life. His will made no mention of a surviving daughter, but stated that he was leaving nothing to his "heirs at law . . . for the reason that they have shown no interest in me."

The beneficiaries under the will sought to have it approved by the Secretary of the Interior, as required by 25 U. S. C. § 373.[3] A hearing was had before an Examiner of Inheritance, Office of the Solicitor, Department of the Interior. Dorita High Horse, claiming as sole surviving issue, and certain nieces and nephews of the testator contended that the will was not entitled to departmental approval, arguing that due to the effects

---

trust for the allottee, or his heirs, during the trust period, or any extension thereof. Chahsenah had inherited the interests he held at his death.

[3] Section 2 of the Act of June 25, 1910, 36 Stat. 856, as amended by Act of February 14, 1913, 37 Stat. 678, 25 U. S. C. § 373, provides in pertinent part:

"Any persons of the age of twenty-one years having any right, title, or interest in any allotment held under trust or other patent containing restrictions on alienation or individual Indian moneys or other property held in trust by the United States shall have the right prior to the expiration of the trust or restrictive period, and before the issuance of a fee simple patent or the removal of restrictions, to dispose of such property by will, in accordance with regulations to be prescribed by the Secretary of the Interior: *Provided, however,* That no will so executed shall be valid or have any force or effect unless and until it shall have been approved by the Secretary of the Interior: *Provided further,* That the Secretary of the Interior may approve or disapprove the will either before or after the death of the testator . . . . *Provided also,* That this section and section 372 of this title shall not apply to the Five Civilized Tribes or the Osage Indians."

of chronic alcoholism, cirrhosis of the liver, and diabetes, George Chahsenah was incompetent to make a will. Pursuant to the provisions of § 5 of the Act of February 28, 1891, 26 Stat. 795, 25 U. S. C. § 371, if Chahsenah had died intestate his putative daughter, Dorita High Horse, would have been an heir at law, whether or not her parents were married.

The Examiner found that the will of March 14, 1963, drawn on a form printed by the Department of the Interior for that purpose, was Chahsenah's last will and testament and that it had been prepared by an attorney employed by the Department of the Interior who advised the testator concerning the will. He also found that at the time the will was made the attorney and the witnesses executed an affidavit attesting that the will was properly made and executed, and that the decedent was of sound and disposing mind and memory and not acting under undue influence, fraud, duress, or coercion at the time of its execution. The Examiner found that Dorita High Horse was George Chahsenah's illegitimate daughter and his sole heir at law. He concluded, however, that the evidence presented by the contestants was not sufficient to outweigh the presumption of correctness attaching to a properly executed will, in addition to which were the unimpeached statements of the draftsman and witnesses that Chahsenah possessed testamentary capacity. The Examiner concluded that the testator's failure to provide for Dorita High Horse was not unnatural since there was no evidence of any close relationship between the two during any part of their lives. The will was approved and distribution in accordance with its provisions was ordered.

A petition for rehearing, contending that the evidence did not support the Examiner's conclusion regarding the decedent's competency, was denied. An appeal was taken to the Regional Solicitor, Department of the In-

terior, an officer having authority to make a final decision in the matter on behalf of the Secretary. He concluded that although the evidence supported the Examiner's finding that decedent's will met the technical requirements for a valid testamentary instrument, 25 U. S. C. § 373 vested in the Secretary broad authority to approve or disapprove the will. In exercising that discretion, the Regional Solicitor viewed his authority as requiring him to examine all the circumstances to determine whether "approval will most nearly achieve just and equitable treatment of the beneficiaries thereunder and the decedent's heirs-at-law." Under this standard he concluded that the decedent, an unemployed person addicted to alcohol[4] and living on the income he received from his inherited land allotments, had not fulfilled his obligations to his illegitimate daughter and had ceased cohabiting with her mother shortly before Dorita's birth, thus failing to provide her with a "normal home life during her childhood." The Regional Solicitor concluded that although the daughter was a married adult and could not legally claim support monies from her father or his estate, "it is inappropriate that the Secretary perpetuate this utter disregard for the daughter's welfare . . . ." Accordingly, he found that under the circumstances the Examiner's approval of the will was not a reasonable exercise of the discretionary responsibility vested in the Secretary. He thereupon set aside the Examiner's action, disapproved the will,[5] and ordered

---

[4] Reference to Chahsenah's supposed alcohol addiction carries an intimation that the Regional Solicitor saw some want of testamentary capacity, a notion contrary to his approval of the Examiner's finding of testamentary capacity and absence of undue influence.

[5] The Regional Solicitor gratuitously volunteered that if any of the five previous wills made by the testator between 1956 and 1963 were presented he would disapprove them because they made no provision for Dorita High Horse. The record discloses no inquiry

the entire estate distributed by intestate succession to Dorita High Horse as sole heir at law.

The beneficiaries under the will brought an action against the Secretary of the Interior in the United States District Court for the Western District of Oklahoma contending that the action of the Regional Solicitor was arbitrary, capricious, and an abuse of discretion, and that it exceeded the authority conferred upon the Secretary by 25 U. S. C. § 373. The plaintiffs sought to have the District Court review the Regional Solicitor's action in accord with the standards of the Administrative Procedure Act, 5 U. S. C. §§ 701–706 (1964 ed., Supp. IV), arguing that the District Court had jurisdiction over the matter by virtue of either that Act [6] or 28 U. S. C. § 1361.[7] Dorita High Horse was allowed to intervene as a party defendant. Both the Secretary and Dorita High Horse moved for summary judgment, contending that the action of the Regional Solicitor was within the authority conferred upon the Secretary, and, as such, is made final and unreviewable by 25 U. S. C. § 373. They also contended that the Regional Solicitor's decision was in accordance with the evidence, was not arbitrary or capricious, and did not involve an abuse of discretion. Although the Secretary conceded that the

by him into the circumstances of the execution of those wills, the testator's state of health at the time of their execution or his reasons for omitting provision for Dorita High Horse.

[6] The plaintiffs supporting the will appear to have relied upon 5 U. S. C. § 702 (1964 ed., Supp. IV), which provides:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

[7] 28 U. S. C. § 1361 provides:

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

District Court had jurisdiction to review the action of the Regional Solicitor, Dorita High Horse contended that neither the Administrative Procedure Act nor 28 U. S. C. § 1361 allowed judicial review.

The District Court held that while there was some question as to whether jurisdiction existed under the Administrative Procedure Act, 28 U. S. C. § 1361 did provide a basis for jurisdiction, "in order to effectuate the purposes of the Administrative Procedure Act by providing the review function which the act contemplates." [8] 277 F. Supp. 464, 465 n. 1. The court then reasoned that, unlike § 1 of the Act of June 25, 1910, 36 Stat. 855, 25 U. S. C. § 372,[9] § 2, 36 Stat. 856, as amended by the Act of February 14, 1913, 37 Stat. 678, 25 U. S. C. § 373, contains no language conferring unreviewable finality upon a decision of the Secretary approving or disapproving an Indian's will. The District Judge concluded that the Administrative Procedure Act, 5 U. S. C. § 701 (1964 ed., Supp. IV), does not preclude judicial review of the Regional Solicitor's action. On the merits he held that Congress had conferred upon adult Indians

---

[8] We express no opinion as to the correctness of this determination. The complaint alleged that the amount in dispute was in excess of $10,000, exclusive of interest and costs, and that the dispute arose under the laws of the United States. Independently of the District Court's ruling, it had jurisdiction over the complaint under 28 U. S. C. § 1331. Cf. *Machinists* v. *Central Airlines,* 372 U. S. 682, 685 n. 2 (1963); *AFL* v. *Watson,* 327 U. S. 582, 589–591 (1946).

[9] That section provides in pertinent part:

"When any Indian to whom an allotment of land has been made, or may hereafter be made, dies before the expiration of the trust period and before the issuance of a fee simple patent, without having made a will disposing of said allotment as hereinafter provided, the Secretary of the Interior, upon notice and hearing, under such rules as he may prescribe, shall ascertain the legal heirs of such decedent, *and his decision thereon shall be final and conclusive. . . ."* (Emphasis added.)

the right to make a will, limited only by the requirement that it be approved by the Secretary.

The District Court held that the review powers of the Secretary are not so broad as to defeat a plainly expressed and rationally based distribution by one who possessed testamentary capacity. The court concluded that the Regional Solicitor incorrectly viewed the Secretary's powers as authorizing disapproval of any will thought unwise or inequitable, and stated: "Congress has conferred the right to make a will upon the Indian and not upon the Secretary. The Secretary can no more use his approval powers to substitute his will for that of the Indian than he can dictate its terms." 277 F. Supp., at 468. The case was remanded to the Secretary with directions to approve the will and distribute the estate in accordance with its provisions.

On appeal the Court of Appeals for the Tenth Circuit reversed the District Court, holding that the Secretary's action under 25 U. S. C. § 373 was unreviewable.[10]

Two basic questions are presented here: First, whether the Secretary's action is subject to judicial review; and second, if judicial review is available, whether on this record the Secretary's decision on the validity of the will was within the scope of authority vested in him under 25 U. S. C. § 373.

I

The Administrative Procedure Act contemplates judicial review of agency action "except to the extent that— (1) statutes preclude judicial review; or (2) agency ac-

---

[10] There is a conflict in the circuits on this point. Compare *Hayes* v. *Seaton,* 106 U. S. App. D. C. 126, 128, 270 F. 2d 319, 321 (1959); *Homovich* v. *Chapman,* 89 U. S. App. D. C. 150, 153, 191 F. 2d 761, 764 (1951), with *Heffelman* v. *Udall,* 378 F. 2d 109 (C. A. 10th Cir.), cert. denied, 389 U. S. 926 (1967); *Attocknie* v. *Udall,* 390 F. 2d 636 (C. A. 10th Cir.), cert. denied, 393 U. S. 833 (1968).

tion is committed to agency discretion by law. . . ." 5 U. S. C. § 701 (1964 ed., Supp. IV). Earlier in this Term in *City of Chicago* v. *United States,* 396 U. S. 162, 164 (1969), relying on *Abbott Laboratories* v. *Gardner,* 387 U. S. 136, 140 (1967), we noted that "we start with the presumption that aggrieved persons may obtain review of administrative decisions unless there is 'persuasive reason to believe' that Congress had no such purpose." [11]   Section 2 of the Act of 1910 contains no language displaying a congressional intention to make unreviewable the Secretary's approval or disapproval of an Indian's will.

The respondents argue that we should follow the course taken by the Court of Appeals, reading into § 2 the language of the first section of the 1910 Act, which declares that the Secretary's decisions ascertaining the legal heirs of deceased Indians are "final and conclusive." Cf. *First Moon* v. *White Tail,* 270 U. S. 243, 244 (1926). The respondents contend that §§ 1 and 2 of the 1910 Act must be read *in pari materia* because both deal with the Secretary's power over the devolution of lands held in trust by the United States and both vest in the Secretary broad managerial and supervisory power over allotted lands.

We find this unpersuasive.   First, while § 1 of the 1910 Act applies only to Indians possessed of allotments, § 2, as amended in 1913, also applies to all Indians having individual Indian monies or other properties held in trust by the United States.   Thus, the coverage of these sections is not identical.   Second, the 1910 Act is composed of some 33 sections, virtually all of which deal with the Secretary's managerial and supervisory powers over

---

[11] See also *Association of Data Processing Service Organizations* v. *Camp, ante,* p. 150; *Barlow* v. *Collins, ante,* p. 159.

Indian lands. Many of these provisions vest in the Secretary discretionary authority. For example, § 3 of the Act permits transfers of beneficial ownership of allotments by providing that allottees can relinquish allotments to their unallotted children if the Secretary "in his discretion" approves. 25 U. S. C. § 408. Yet neither this section nor any of the others in the enactment contains language cloaking the Secretary's actions with immunity from judicial review. If the respondents' position were accepted and we implied the finality language of § 1 into § 2, it would be difficult to justify on a reading of the statute a later refusal to extend the "final and conclusive" clause to other sections, such as § 3. Congress quite plainly stated that the Secretary's action under § 1 was not to be subject to judicial scrutiny. Similar language in § 2 would have made clear that Congress desired to work a like result under that section. Cf. *City of Chicago* v. *United States, supra.*

## II

The Regional Solicitor accepted the findings and conclusions of the Examiner of Inheritance that the testator had testamentary capacity when he executed the instrument, that he was not unduly influenced in its execution, and that it was executed in compliance with the prescribed formalities. This removes from the case before us all questions except the scope of the Secretary's power to grant or withhold approval of the instrument under 25 U. S. C. § 373.

The Regional Solicitor's view of the scope of the Secretary's power is reflected in his statement:

"When a purported will is submitted for approval and it has been determined that it meets the technical requirements for a valid will, further consideration must be given before approving or disapproving

it to determine whether approval will most nearly achieve *just and equitable treatment of the bene-ficiaries thereunder and the decedent's heirs-at-law."* App. 84–85. (Emphasis added.)

The basis of the Regional Solicitor's action emerges most clearly from his reliance on the legal relationship of the testator to his daughter and his failure to support her. From this he concluded that failure to provide for the daughter in the will did not meet the just and equitable "standard" that he considered the Secretary was authorized to apply in passing on an Indian will. The Regional Solicitor related the failure to support the daughter in her childhood to the absence of provision for her in the will and declared that the decedent "had an obligation to his daughter which was not discharged either during his lifetime or under the terms of his purported will. *For this reason* it is inappropriate that the Secretary perpetuate this utter disregard for the daughter's welfare . . . ." (Emphasis added.) While thus stressing the natural ties with Dorita High Horse, the Regional Solicitor neither challenged nor gave weight to the predicate of the Examiner's determination which was that the decedent had a close and sustained familial relationship with his niece and had resided in her home, while, in contrast, he had virtually no contact with his natural daughter.

To sustain the administrative action performed on behalf of the Secretary would, on this record, be tantamount to holding that a public officer can substitute his preference for that of an Indian testator. We need not here undertake to spell out the scope of the Secretary's power, but we cannot assume that Congress, in giving testamentary power to Indians respecting their allotted property with the one hand, was taking that power away with the other by vesting in the Secretary

the same degree of authority to disapprove such a disposition.[12]

In reaching our conclusions it is not necessary to accept the contention of the petitioners that the Secretary's authority is narrowly limited to passing on the formal sufficiency of a document claimed to be a will. The power to make testamentary dispositions arises by statute; here we deal with a special kind of property right under allotments from the Government. The right is not absolute; the allottee is the beneficial owner while the Government is trustee. 25 U. S. C. § 348. The Indian's right to make *inter vivos* dispositions is limited and requires approval of the Secretary. The legislative history reflects the concern of the Government to protect Indians from improvident acts or exploitation by others, and comprehensive regulations govern the process of such *inter vivos* dispositions. No comparable regulations govern the right to make testamentary dispositions, and from this one might argue that the power of an Indian relating to testamentary disposition of allotted property is uninhibited. The legislative history on this score is perhaps no more or less reliable an indicator of what Congress intended than is usual when the scope of administrative discretion is in question.

Whatever may be the scope of the Secretary's power to grant or withhold approval of a will under 25 U. S. C.

---

[12] This is borne out by the Secretary's interpretation of § 373 in an arguably "improvident" testamentary disposition. As to a will naming a Caucasian as a beneficiary, a memorandum, dated May 10, 1941, from the Solicitor's Office to the Assistant Secretary of the Interior, stated, *inter alia*,

"Whatever discretion the Secretary may have in the matter of approving or disapproving the will, it is clear that this discretion should not be exercised to the extent of substituting his will for that of the testator. . . ."

§ 373, we perceive nothing in the statute or its history or purpose that vests in a governmental official the power to revoke or rewrite a will that reflects a rational testamentary scheme with a provision for a relative who befriended the testator and omission of one who did not, simply because of a subjective feeling that the disposition of the estate was not "just and equitable." The Regional Solicitor's action was based on nothing more that we can discern than his concept of equity and in our view this was not the kind or degree of discretion Congress vested in him. Cf. *Attocknie* v. *Udall*, 261 F. Supp. 876 (D. C. W. D. Okla. 1966), reversed on other grounds, 390 F. 2d 636 (C. A. 10th Cir.), cert. denied, 393 U. S. 833 (1968).

The Secretary's task is not always an easy one and perhaps is rendered more difficult by the absence of regulations giving guidelines. It is not difficult to conceive of dispositions so lacking in rational basis that the Secretary's approval could reasonably be withheld under § 373 even though the same scheme of disposition by a non-Indian of unrestricted property might pass muster in a conventional probate proceeding; on this record, however, we see no basis for the decision of the Regional Solicitor and must hold it arbitrary and capricious. There being no suggestion that the record need or could be supplemented by added factual material, the case is remanded to the Court of Appeals with directions to reinstate the judgment of the District Court.

*Reversed and remanded.*

MR. JUSTICE BLACK, for the reasons set forth by the Court of Appeals in this case, 407 F. 2d 394, and in *Heffelman* v. *Udall*, 378 F. 2d 109 (C. A. 10th Cir. 1967), would affirm the judgments below.

Mr. Justice Harlan, concurring.

The Court's opinion has two aspects: *First,* that the Secretary of the Interior's approval or disapproval of a will disposing of restricted Indian property is subject to judicial review in a federal court. *Second,* that the Secretary's action disapproving the decedent's will in the circumstances of this case was not a valid exercise of the authority vested in him by the first proviso of 25 U. S. C. § 373.[1] I join the Court's opinion in both respects; but I deem it appropriate to amplify the reasons given by the Court for its second conclusion.

From the facts stated in the Court's opinion, I think the issue presented by the merits of this case can fairly be characterized as follows: When there is no evidence of fraud, duress, or undue influence, when the decedent is of sound and disposing mind, when there is a rational basis for the decedent's disposition, and when the will meets all the technical requirements of the Secretary's regulations, does the proviso of 25 U. S. C. § 373 authorize the Secretary of the Interior or his delegate to withhold approval of an Indian will simply because he concludes, in the absence of any standards of general applicability, that the distribution pursuant to the will does not "most nearly achieve just and equitable treatment of the beneficiaries thereunder and the decedent's heirs-at-law"?

As the Court's opinion suggests, the petitioners would have us decide this issue by holding that the Secretary can do no more under § 373 than see to it that the various technical requirements of a valid testamentary instrument have been met. Nothing in the language of the statute would prevent such a construction, and as a way of preventing any possibility of arbitrary bureaucratic action to be undertaken in the name of paternalism

---

[1] The text of 25 U. S. C. § 373 is quoted in relevant part in n. 3, *ante,* at 600, of the Court's opinion.

there is much to commend it. I think the petitioners' claim must be rejected, however, because both the statutory network relating to the restrictions on allotted lands (of which § 373 is only a part) and the legislative history of § 373 itself, suggest the Secretary's role was not to be that limited. Nevertheless, like the Court, I conclude that the Secretary is not empowered to disapprove a will simply on the basis of an *ad hoc* determination that it is unfair. In reaching this conclusion, although the Court's reasoning and my own are parallel in significant respects, I think it helpful for purposes of analysis to elaborate in somewhat greater detail than the Court finds necessary the background of the allotment system, the legislative history of § 373, and the administrative practice of the Department of the Interior in administering Indian wills.

Section 373 relates to the testamentary disposition of what is known as restricted Indian property. This property consists primarily of beneficial interests in land allotments held in trust by the Government for individual Indians. Under the allotment system established by the Dawes Act in 1887, 24 Stat. 388, an eligible Indian was given a property interest in a specific tract of land. Although the allottee was ordinarily given possessory rights to the land, his interest was not a fee simple. Instead, the land is held in trust by the United States for the benefit of the particular Indian, 25 U. S. C. § 348. See 25 U. S. C. §§ 331–358.

As long as the legal title to the land is held in trust, there are drastic restrictions on the alienability of these allotment interests.[2] In fact, 25 U. S. C. § 348 broadly

---

[2] At the end of the trust period—not yet expired because the initial 25-year period has been extended—the allottee was to receive a fee simple interest in the land. See 25 U. S. C. § 391. Before the termination of the trust period, the Secretary is now authorized, for a particular Indian, to remove the restrictions on alienation, see 25 U. S. C. § 372; 25 CFR § 121.49.

states that any "conveyance" of an allotment held in trust, or any "contract" affecting that land, "shall be absolutely null and void." Moreover, it is a crime for "any person to induce any Indian to execute any contract, deed, mortgage . . . purporting to convey any land . . . held by the United States in trust for such Indian," 25 U. S. C. § 202. Under an elaborate regulatory scheme, it is only by securing the prior approval of the Secretary of the Interior that someone like George Chahsenah, the decedent here, could sell, mortgage, or give away his restricted allotments.[3] These substantial restrictions on the free alienability of allotted lands suggest that, in making the Secretary's approval a condition for the validity of a will disposing of these lands, Congress did not mean to foreclose the possibility that the Secretary might do more than simply see that the will had the requisite number of witnesses, and that the testator had the capacity to make a will.

What little legislative history there is for § 373—and there is very little—also suggests that the Secretary was given broader powers than a state probate judge. Section 373 has its origins in a 1910 "omnibus" Indian bill, 36 Stat. 855–863. This bill was a potpourri of provisions, for the most part unrelated to the devolution of allotted lands. However, § 2 of the bill, 36 Stat. 856, gave to the Indian, for the first time, the power to dispose of his restricted allotments by will,[4] rather than

---

[3] See 25 CFR §§ 121.9–121.20, 121.61, 121.18 (b), promulgated under the authority of 25 U. S. C. § 379. There are also restrictions on the allottee's ability to lease the land, see 25 U. S. C. §§ 393, 403, 415a; 25 CFR subchs. P and Q.

[4] Section 2, 36 Stat. 856, provided:

"That any Indian of the age of twenty-one years, or over, to whom an allotment of land has been or may hereafter be made, shall have the right, prior to the expiration of the trust period and before the issue of a fee simple patent, to dispose of such allotment by will, in accordance with rules and regulations to be prescribed

simply having the allotments descend to his heirs by the operation of law.[5] The origins of § 2 are rather obscure, and only the House Committee Report on the omnibus bill even refers to § 2 and then only in descriptive terms.[6]

Even though the Committee Reports provide no indication of the Secretary's powers under the proviso of § 373, there was one exchange on the floor of the House in which Congressman Burke, the sponsor of the omnibus bill, does strongly suggest that he at least envisioned the role of the Secretary under § 373 to extend beyond simply seeing that the will met all the formal requirements of a valid testamentary instrument. This exchange between Congressman Burke and Congressman Cox of Indiana went as follows:

"Mr. COX of Indiana. Mr. Chairman, what is the gentleman's opinion as to whether or not the

by the Secretary of the Interior: *Provided, however,* That no will so executed shall be valid or have any force or effect unless and until it shall have been approved by the Commissioner of Indian Affairs and the Secretary of the Interior: *Provided, further,* That sections one and two of this Act shall not apply to the State of Oklahoma." Section 2 was amended to its present form (25 U. S. C. § 373) by 37 Stat. 678 (1913).

[5] See 25 U. S. C. § 348.

[6] See H. R. Rep. No. 1135, 61st Cong., 2d Sess., 2 (April 26, 1910); S. Rep. No. 868, 61st Cong., 2d Sess. (June 17, 1910); H. R. Conf. Rep. No. 1727, 61st Cong., 2d Sess. (June 23, 1910). The original bill, as introduced in the House by Congressman Burke and referred to the Indian Affairs Committee, contained no provision empowering Indians to make wills. See H. R. 12439, 61st Cong., 2d Sess. (introduced Dec. 6, 1909). The bill reported out of committee, H. R. 24992, had such a provision, however. The House Committee Report suggested that the changes and additions to H. R. 12439 found in H. R. 24992 were made in response to recommendations made by the Secretary of the Interior in a letter of April 13, 1910. See H. R. Rep. No. 1135, *supra,* at 1. However, examination of the letter referred to in the House Committee Report, together with the revisions suggested therein, reveals neither

proviso contained in section 2 [now 25 U. S. C. § 373] does not place the complete power of the will in the hands of the Commissioner of Indian Affairs?

"Mr. BURKE of South Dakota. The Commissioner of Indian Affairs and the Secretary of the Interior, of course, would not favor the provision permitting Indians to make wills unless the making of them were subject to the approval of the department.

"Mr. COX of Indiana. Under the proviso as it now exists in section 2, does it not place complete power in the hands of the Secretary of the Interior and the Commissioner of Indian Affairs over the will of an Indian with absolute power to revoke the Indian's will?

"Mr. BURKE of South Dakota. I think so.

"Mr. COX of Indiana. Then after all it simply imposes the entire power of making the will in the hands of the Commissioner of Indian Affairs.

"Mr. BURKE of South Dakota. I will say the purpose was this: It frequently happened—and I will speak of that in connection with sections 3 and 4 at the same time—it frequently happened an Indian has three or four children. He was allotted land at the time he had only two children, and the father and the mother have allotments and the two children who

---

a reference to nor an espousal of the idea that Indians be given testamentary capacity over restricted lands. See letter of April 13, 1910, from Secretary of the Interior Richard A. Ballinger to Hon. Charles H. Burke with new draft of H. R. 12439.

The bill (H. R. 24992) was passed by the House as reported out of the Committee. The Senate amended the bill, deleting § 2 along with most of the remainder of the original House version. See S. Rep. No. 868, *supra.* However, the Conference readopted for the most part all of the original House version, see H. R. Conf. Rep. No. 1727, *supra,* and § 2 was enacted into law in the identical form as originally passed by the House.

were living at the time allotments were made have allotments, but the other children have no land at all.

"Now, the Indian is just as human as a white man, and it frequently happens that he desires to have permission to give his allotment to the children who have no land, and in a case of that kind undoubtedly the Interior Department would O. K. it, whereas if it was a will giving his estate to some person who ought not to have it, then they would disapprove it.

"Mr. COX of Indiana. I suppose the purpose of this proviso is an equitable purpose, reserving in the Department of the Interior the power to compel the Indian to make a proper will——

"Mr. BURKE of South Dakota. Not compel him at all.

"Mr. COX of Indiana. Or else revoke the will if he did not make a proper will.

"Mr . BURKE of South Dakota. If the Indian makes a will, and it is not satisfactory to the commissioner and the Secretary, and I put both in to safeguard it, it will be disapproved of, and of course will be of no effect." 45 Cong. Rec. 5812.

It is primarily on the basis of the colloquy on the floor that the United States argues that we should uphold the Secretary's action in this case. According to the Government, this exchange shows that the Secretary was empowered to take "equitable considerations" into account in approving or disapproving a will. However, to affirm the administrative action in this instance, it would be necessary to hold that an otherwise valid will reflecting a rational testamentary disposition of the decedent's property can be disapproved simply because a government official decides that had he been the testator he

would have written a different, and, to his way of thinking, a "fairer" will.

Without attempting to define with precision the outer limits of the Secretary's authority under the proviso of § 373, I think it clear that it cannot be construed this broadly. First, it must be remembered that the primary purpose of § 373 is to give to the testator, not to the Secretary, the power to dispose of restricted property by a will. In according to the Indian testamentary capacity over restricted property Congress could have only intended to give him the power to dispose of restricted property according to personal preference rather than the predetermined dictates of intestate succession. Such is the essence of the power to make a will. The notion that the Secretary can disapprove a will on the basis of a subjective appraisal—governed by no standards of general applicability[7]—that the disposition is unfair to a person who would otherwise inherit as a legal heir simply cuts too deeply into the primary objective of the statutory grant.

This conclusion that there must be limits to the Secretary's power under the proviso of § 373 if the primary purpose of the statute is to be accomplished, finds explicit support in the Department of the Interior's own earlier construction of § 373. In response to a letter suggesting that the Secretary disapprove a will that both disinherited certain legal heirs and left part of the estate to a white person not related to the Indian decedent, the Office of the Solicitor stated in a written memorandum, after quoting the statute:

> "The right to make a will is thus conferred on the Indian not on the Secretary. Whatever discretion the Secretary may have in the matter of approving or disapproving the will, it is clear that this discre-

---

[7] See n. 10, *infra*.

618

tion should not be exercised to the extent of substituting his will for that of the testator. Such would clearly be the effect of disapproval in the present case. The naming of a non-Indian as one of the beneficiaries obviously is not a valid objection to approval of the will in the absence of fraud or other imposition, which is clearly not present." [8]

This statement reflects what appears to have been the consistent practice of the Secretary from 1910 up to the time of the administrative action taken in this case. For, apart from the case now before us, no other instance has been called to our attention in which an Indian's will was disapproved under circumstances requiring the broad discretionary authority claimed here.[9]

---

[8] Memorandum dated May 10, 1941, from the Solicitor's Office to the Assistant Secretary of the Interior.

[9] At oral argument, the government attorney was asked whether there were any other instances where the Secretary had disapproved a will in circumstances such as those here. He replied, "No; I have only been able to find cases in which the wills have been approved, though it is clear that equitable considerations were taken into account." Transcript of Oral Argument 30. The opinion of the Regional Solicitor in the present case cites three unreported decisions to support his broad claim of the right to determine whether the "will most nearly achieve[s] just and equitable treatment." Although there is language in these opinions claiming for the Secretary "discretionary" authority to disapprove wills, all three involved wills that disinherited minor children for whom the decedent had an obligation of support at the time of his death. Moreover, in two of the three cases the disinherited child was born after the execution of the will, thus creating the possibility that the disinheritance was inadvertent. See Estate of Oliver Maynahonah, IA–T–1 (June 30, 1966); Estate of Kosope (Richard) Maynahonah, IA–141 (Oct. 28, 1954); Estate of Frank (Oren F.) Simpkins (will disapproved Dec. 1, 1943). In this case, on the other hand, the decedent's daughter was an adult, who was married, and who was completely estranged from her father both when his will was executed and at the time of his death. On the facts shown here

In summary, I think the statutory framework and legislative history of § 373 do indicate that the Secretary of the Interior is not foreclosed from going beyond the technical requirements in deciding whether to approve a will. A will that disinherits the natural object of the testator's bounty should be scrutinized closely. If such a will was the result of overreaching by a beneficiary, or fraud; if the will is inconsistent with the decedent's existing legal obligation of support, or in some other way clearly offends a similar public policy; or if the disinheritance can be fairly said to be the product of inadvertence—as might be the case if the testator married or became a parent after the will was executed— the Secretary might properly disapprove it. However, I do not think the Secretary can withhold approval simply because he concludes it was unfair of the testator to disinherit a legal heir in circumstances where as here there is a perfectly understandable and rational basis for the testator's decision.[10]

---

there is no basis for concluding that the decedent's will reflects an uninformed or irrational disposition, or one that is contrary to public policy. Any notion that the Secretary has a regular policy of disapproving wills that disinherit illegitimate offspring is belied by *Attocknie* v. *Udall,* 261 F. Supp. 876 (D. C. W. D. Okla. 1966), where the Secretary approved a will that disinherited a son born out of wedlock.

[10] I do not mean to suggest that the Secretary might not promulgate a regulation that, like certain state statutes, provides that a testator cannot completely disinherit any of his offspring. A general standard like this would, of course, eliminate the dangers inherent in *ad hoc* determinations of whether the will is in some vague sense fair to an heir.