Dolly Cusker **AKERS, Appellant,**

v.

**Rogers C. B. MORTON, Secretary of the Interior, et al., Appellees.**

No. 71-3002.

United States Court of Appeals, Ninth Circuit.

June 20, 1974.

Gerald J. Neely (argued), of Towe, Neely & Ball, Billings, Mont., Albert A. Grorud, Washington, D. C., for appellant.

Keith L. Burrowes, Asst. U. S. Atty. (argued), Otis L. Packwood, U. S. Atty., Shiro Kashiwa, Asst. Atty. Gen., Billings, Mont., George R. Hyde, Lands Div., U. S. Dept. of Justice, Washington, D. C., for appellees.

Before HUFSTEDLER and KILKENNY, Circuit Judges, and TAYLOR,* District Judge.

HUFSTEDLER, Circuit Judge:

Mrs. Akers, an Indian and the widow of John Akers, also an Indian, challenges the determinations of the Secretary of the Interior that her husband's will disinheriting her was valid and that she had no dower interest in the restricted Indian allotment land that he devised to a third person. Summary judgment in favor of the Secretary was granted and she appeals.

Mr. and Mrs. Akers lived on restricted land in Montana. The land had been acquired with Mrs. Akers' funds, but title was taken solely in Mr. Akers' name.[1] Their ranching and farming enterprise was managed largely by Mrs. Akers during the last several years of Mr. Akers' life because he had become a chronic alcoholic. During the fifteen months before his death in February 1959, Mr. Akers drew three wills, respectively dated December 3, 1957, December 5, 1957,

and December 10, 1958. In a proceeding before a hearing officer of the Department of the Interior, Mrs. Akers successfully contested the 1958 will on the ground that Mr. Akers' deterioration from alcoholism rendered him mentally incompetent to execute the will. The December 5, 1957, will was contested before a different hearing examiner. The will was held valid on the examiner's finding that Mr. Akers had executed that will during a lucid interval. The examiner also rejected Mrs. Akers' claim to dower in the restricted land. She exhausted her administrative remedies and appropriately sought judicial review under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, of the Secretary's determinations affirming the examiner. (Tooahnippah v. Hickel (1970) 397 U.S. 598, 90 S.Ct. 1316, 25 L.Ed.2d 600.)

Only two of the several issues Mrs. Akers raises on appeal require discussion: (1) the sufficiency of the evidence to support the administrative determination that Mr. Akers was competent to execute the December 5, 1957, will, and (2) Mrs. Akers' claim of the dower in the restricted land.

The evidence on the question of Mr. Akers' mental competency when he executed the will was conflicting. We cannot say that the evidence that he had a lucid interval when he made the will was too insubstantial to support the administrative finding.

Mrs. Akers' assertion of a dower right in the restricted land must also be rejected. Alienation of restricted Indian allotment land is controlled by federal law. Montana's dower law cannot of its own force entitle Mrs. Akers to claim a wife's interest in her deceased husband's restricted lands. If the relevant federal statute had incorporated Montana law by reference (*cf. e. g.,* 25

---

* Honorable Fred Taylor, District of Idaho, sitting by designation.

1. Title in Mrs. Akers under a resulting trust theory was neither asserted in the proceedings before the Secretary or the district court nor argued before this court. We therefore do not address the question of whether the restricted land was properly included in Mr. Akers' Estate. (*Cf.* 25 C.F.R. § 15.32 (1958).)

U.S.C. § 348), Mrs. Akers could have claimed dower under that federal statute. The governing federal statute, 25 U.S.C. § 373, however, does not refer to state law. Even if Congress had merely failed to exclude local law in this context, Mrs. Akers might have claimed dower (*see* Blundell v. Wallace (1925) 267 U.S. 373, 376, 45 S.Ct. 247, 69 L.Ed. 664), but section 373 manifests an intent to exclude local law. · (*Id.* at 377, 45 S.Ct. 247; Blanset v. Cardin (1921) 256 U.S. 319, 41 S.Ct. 519, 65 L.Ed. 950.) The sole limit on an Indian testator's freedom to devise restricted lands is the power vested in the Secretary of the Interior to disapprove wills devising restricted property.

■ Because each of the specific findings made by the Secretary in this case was amply supported in the record before him, Mrs. Akers can successfully challenge his decision only if he failed to exercise fully the discretion given him by the statute. If the Secretary's discretion were broad enough to allow him to disapprove Mr. Akers' will because the will violated the principles of public policy that prompted Montana to enact its dower law, we would remand to the Secretary for an exercise of that discretion, for the Secretary did not exercise discretion in this regard.[2] The Supreme Court, however, has substantially limited the Secretary's discretion under section 373. The Secretary may disapprove a will only if it is technically deficient or

if it is irrational. Where, as in this case, it is rational to disinherit a disfavored relative in preference to a more distant but more favored relative, the Supreme Court has indicated that the ·Secretary is not free to disapprove the will merely on notions of fairness or equity. (Tooahnippah v. Hickel, *supra*, 397 U.S. at 610, 90 S.Ct. 1316, 25 L.Ed. 2d 600.) In *Tooahnippah*, the Court reversed the Secretary's disapproval of a will disinheriting a daughter with whom the father had had little contact in favor of a niece with whom the testator had lived. The Secretary's approval of Mr. Akers' will is unassailable, for the Secretary upon adequate evidence has exhausted the discretion thus given to him.

■ Although the *Blanset* and *Tooahnippah* cases require us to affirm the judgment in the Secretary's favor, we cannot in good conscience do so without expressing our dissatisfaction with this state of the law. Congress' overriding purposes in enacting the General Allotment Act of 1887 (25 U.S.C. § 331, as amended) were to protect the Indians' interests in restricted land and to provide Indian allottees and their families with permanent homes. (*E. g.*, Hopkins v. United States (9th Cir. 1969) 414 F. 2d 464; Wheeler v. Petite (D.Ore.1907) 153 F. 471; Parr v. United States (D. Ore.1907) 153 F. 462; *cf.* Squire v. Capoeman (1956) 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883.)[3] The policy has been consistently implemented by recognizing

---

**2.** The Secretary concluded that the will was not unjust or unnatural because there was evidence of disharmony between husband and wife in the later years of their marriage. While the evidence suggests that the disposition directed by the will was rational, it is irrelevant to a determination of whether, even if rational, such a disposition should be disapproved because it is contrary to public policy.

**3.** "[O]ne of [the] main purposes [of the general allotment act] was to furnish a permanent home, ultimately, for the families of such Indians. . . . In order, therefore, to carry out the idea of affording a permanent home for the Indian family, there was a purpose, manifestly, to secure the widow

in the home of a deceased head of a family by some permanent right. Dower is suited to this purpose." Wheeler v. Petite, *supra*, 153 F. at 473.

"The interpretation I have given to the act, construed in connection with the treaty, seems more in consonance with the intendment of Congress and the expectations and anticipations of the Indians. It secures, as was stipulated in the treaty of 1855, to the family, in case of the death of the head thereof, the possession and enjoyment of the permanent home and the improvements thereon. Otherwise, it might happen that the wife of a deceased allottee, or the husband of such an allottee, would be left without any estate whatsoever in any of the Indian lands upon the reservation. . . .

that dower and curtesy rights, existing under state law, apply to allotment lands held by the deceased allottee upon his or her death intestate. (Wheeler v. Petite, *supra*; Parr v. United States, *supra*; "Dower Rights in Restricted Indian Estates" (1954) 61 Interior Dec. 307 (Solicitor's opinion reaffirming right to dower in Montana allotments passing by intestate succession); St. Dennis v. Breedan (1898) 27 Interior Dec. 312 (curtesy); Harrison v. McCauley (1898) 27 Interior Dec. 399 (dower).)

In Blanset v. Cardin, *supra*, 256 U.S. 319, 41 S.Ct. 519, a non-Indian widower claimed that his Indian wife's will devising all of her allotment lands to her children and grandchildren was void to the extent that it deprived him of a one-third interest in her lands under Oklahoma law. In rejecting his claim, the Supreme Court explained that nonrecognition of the state law fulfilled Congress' purpose in enacting section 373, which was "to afford 'protection to dependent and natural heirs against the waste of the estate as the result of an unfortunate marriage and enforced inheritance by state laws.'" (256 U.S. at 326, 41 S.Ct. at 522.) The Court exhibited no awareness that the *Blanset* rule, erasing state law protecting a spouse from disinheritance, would also deprive an Indian widow or widower of any share of allotment land if the allottee devised all of the land to a third person, Indian or non-Indian, free from state or federal restrictions. Perhaps, the Court assumed that the Secretary under section 373 had the power to protect a disinherited Indian spouse by disapproving a will that devised all of the allotment land to others. That assumption, if ever it existed, did not survive Tooahnippah v. Hickel, *supra*, 397 U.S. 598, 41 S.Ct. 519, which limited the Secretary's discretion to evaluation of the technical validity of the will and the rationality of the decedent's testamentary scheme.[4]

■ Together *Blanset* and *Tooahnippah* produce the anomalous result that an Indian's devise of restricted lands is less restricted than an Indian's (or a non-Indian's) devise of any other realty. He or she can will that property free from any state law designed to protect a surviving spouse, and there is no federal law that fills the state law gap. Although we cannot reconcile the result with the public policy expressed by state law establishing dower and curtesy rights or with the congressional intent to provide family homes for Indian allottees and their dependents, we are unable to avoid it. The anomaly will persist until the Supreme Court reconsiders *Blanset* and *Tooahnippah*, the Secretary writes appropriate regulations, or Congress amends section 373 by eliminating all federal restrictions on the testamentary disposition of allotment lands, leaving the dispositions to be controlled by state law (*cf.* Blundell v. Wallace, *supra*), or imposes some federal scheme protecting from disinheritance the spouses of Indian allottees.

Affirmed.

So- at the death of the husband the wife is left without the benefit of any allotment, unless she is to have her dower, which will secure to her the measurable possession and enjoyment of the permanent home. Otherwise, she is left homeless and remediless, dependent wholly upon the charity of relatives and friends, with the government discharged of its guardianship." Parr v. United States, *supra*, 153 F. at 470–471.

The paternalism that characterizes the Allotment Act undoubtedly now offends many Indians and non-Indians, but we are free neither to rewrite history nor to redraft the Act to conform to our notions of contemporary social attitudes.

4. According to Mr. Justice Harlan, specially concurring, the Secretary might have a greater area of discretion if he acted pursuant to promulgated regulations. (*Id.* 397 U.S. at 619, 90 S.Ct. 1316.) No regulations relevant to the issue in this case have been promulgated.