Lawrence R. **FRY** and Nellie R. Fry, husband and wife, Plaintiffs-Appellants,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 76–1779.

United States Court of Appeals,
Ninth Circuit.

June 22, 1977.

Dennis W. Reynolds, argued, Gustafson & Reynolds, Spokane, Wash., for plaintiffs-appellants.

Myron C. Baum, Jeffrey S. Blum, argued, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before CHAMBERS and CHOY, Circuit Judges, and BONSAL,* District Judge.

OPINION

CHOY, Circuit Judge:

■ Appellants, Lawrence and Nellie Fry, are members of the Confederated Tribes of the Colville Reservation (the Tribe). They appeal from a judgment of the district court holding that their income derived from logging operations on Reservation land is not exempt from federal income taxation. We affirm.

Kettle Falls Lumber Company, a non-Indian concern, contracted with the Tribe to cut timber from unallotted lands of the Reservation.[1] Lawrence Fry, in turn, was hired by Kettle Falls as a logging subcontractor, but Fry himself had no direct contractual relationship with the Tribe. The majority of Fry's employees were Indians.

Fry and his wife paid income taxes on the income derived from this logging operation and then sued for a refund.[2] The district court granted the Commissioner's motion for summary judgment. This appeal followed.

■ At the outset, appellants concede that the general rule is that Indians, like other United States citizens, are subject to federal income taxation unless exempted by treaty or statute. *Squire v. Capoeman*, 351 U.S. 1, 6, 76 S.Ct. 611, 100 L.Ed. 883 (1956).[3] In *Squire*, the Supreme Court found such an exemption in Sections 5 and 6 of the General Allotment Act of 1887 (the Act), 25 U.S.C. §§ 348 & 349, *as amended*. It held that, because the Act "evinces a congressional intent to subject an Indian allotment to all taxes only after a patent in fee is issued to the allottee," 351 U.S. at 8, 76 S.Ct. at 616, and because " 'the exemption accorded tribal and restricted Indian lands extends to the income derived directly therefrom'," *id.* at 9, 76 S.Ct. at 616, *quoting* F. Cohen, Handbook of Federal Indian Law 265 (1940), the income realized by a noncompetent Indian allottee from the sale of timber taken from his trust-allotted land was exempt from federal capital gains tax. *See* 351 U.S. at 9–10 & n.19, 76 S.Ct. 611.[4]

In *Stevens v. C.I.R.*, 452 F.2d 741 (9th Cir. 1971), we had occasion to construe the meaning and scope of the *Squire* exemp-

* Honorable Dudley B. Bonsal, United States District Judge for the Southern District of New York, sitting by designation.

1. Reservation land is divided into two classes; land allotted to individual Indians for the use and benefit of the allotee; and common tribal land used for the benefit of the entire community . . . .

C.I.R. v. Walker, 326 F.2d 261, 263 (9th Cir. 1964).

2. It appears that Mrs. Fry was not involved in the logging venture which produced the income at issue here. Her status as taxpayer and appellant apparently derives from the fact that, although filing separately during the relevant years, she reported a portion of the subject income on her tax returns.

3. For recent Supreme Court cases which delineate the rules governing *state* taxation of Indi-

ans and their activities, see *Moe v. Salish & Kootenai Tribes*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976); *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973); *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973). *See also United States v. Antelope*, 430 U.S. 641, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977); *Confederated B. & T. of Yakima Indian Nat. v. Washington*, 550 F.2d 443 (9th Cir. 1977) (en banc).

4. A noncompetent Indian is one who holds allotted lands only under a trust patent and may not dispose of his property without the approval of the Secretary of the Interior. It does not denote mental incapacity.

*Stevens v. C.I.R.*, 452 F.2d 741, 742 n.1 (9th Cir. 1971).

tion. There, we held that income directly derived by a noncompetent Indian allottee from farming and ranching operations on his allotted lands was exempt from federal income taxation regardless of whether he acquired the land as part of an original allotment, by gift from an original allottee, or by purchase from an original allottee or the estate thereof. *See* 452 F.2d at 746, 749. We did so on the basis that the same exemption found in the Act and construed by the Supreme Court in *Squire* covered Stevens' tribe; that it protected ordinary income as well as capital gains; and that it applied in spite of the fact that the land from which Stevens' income directly derived was not acquired by him through original allotment. *See* 452 F.2d at 744–49. *See also Kirkwood v. Arenas*, 243 F.2d 863 (9th Cir. 1957); *United States v. Daney*, 370 F.2d 791 (10th Cir. 1966); *United States v. Hallman*, 304 F.2d 620 (10th Cir. 1962); *Big Eagle v. United States*, 300 F.2d 765, 156 Ct.Cl. 665 (1962); *Asenap v. United States*, 283 F.Supp. 566, 573 (W.D.Okl.1968); *Nash v. Wiseman*, 227 F.Supp. 552, 553–55 (W.D. Okl.1963). *But compare Bird Bear v. McLean County*, 513 F.2d 190, 193 (8th Cir. 1975); *Quinault Allottee Ass'n v. United States*, 485 F.2d 1391, 1398–1400, 202 Ct.Cl. 625 (1973), *cert. denied*, 416 U.S. 961, 94 S.Ct. 1980, 40 L.Ed.2d 312 (1974).[5]

Appellants acknowledge that, since allotted lands are not here at issue, the exemption construed in *Squire* and *Stevens* does not, by its terms, apply. They also admit their inability to cite a statutory or treaty exemption which does specifically apply to them or their activities. Nevertheless, they still seek an exemption, basing their argument on an analogy to *Squire* and *Stevens*. Basically, appellants maintain that, since

the income which the Tribe itself directly derives from the logging operations on tax-exempt land is exempt from federal income taxation, their income too should be shielded. This argument is without merit.

First, appellants here fail to point to any treaty or statute which, in the first instance, exempts the tribal lands from federal taxation. Second, even if we assume that the Reservation lands concerned are tax-exempt,[6] appellants cannot show that their income derives "directly" from those lands. While the *Tribe's* income from appellants' logging operations may indeed be said to derive directly from *its* ownership of the unallotted Reservation lands, *appellants'* income derives from a contract entered into between them and Kettle Falls, whose income in turn derives from a contract between it and the Tribe.

In both *Squire* and *Stevens*, the income which was held to be exempt to the allottee was from operations conducted *on his own allotted land*. Indeed, in *Stevens*, the Tax Court had held taxable income derived from the ranching and farming of land which was leased from *other* allottees by Stevens, and he did not appeal that ruling. *See* 452 F.2d at 743. We, therefore, were concerned only with income directly derived from land which was held by the taxpayer, though acquired other than by original allotment. The Eighth Circuit, however, has held that, even if income derived from tribal land may be tax-exempt to the tribe itself, the income which a noncompetent Indian derives from cattle operations conducted on such lands pursuant to a grazing permit from the tribe is not tax-exempt. *Holt v. C.I.R.*, 364 F.2d 38, 41 (8th Cir. 1966), *cert. denied*, 386 U.S. 931, 87 S.Ct. 952, 17 L.Ed.2d 805

---

5. We have been called upon to construe the Act in contexts other than taxation as well. *See, e. g., United States v. Southern Pacific Transp. Co.*, 543 F.2d 676, 694–95 (9th Cir. 1976); *Dillon v. Antler Land Co.*, 507 F.2d 940 (9th Cir. 1974), *cert. denied*, 421 U.S. 992, 95 S.Ct. 1998, 44 L.Ed.2d 482 (1975); *Akers v. Morton*, 499 F.2d 44, 47–48 (9th Cir. 1974), *cert. denied*, 423 U.S. 831, 96 S.Ct. 51, 46 L.Ed.2d 48 (1975).

6. Indian tax appellants seem regularly to call upon appellate courts to make this unsupported assumption. *See, e. g., C.I.R. v. Walker*, 326 F.2d 261, 264 (9th Cir. 1964); *Holt v. C.I.R.*, 364 F.2d 38, 41 (8th Cir. 1966), *cert. denied*, 386 U.S. 931, 87 S.Ct. 952, 17 L.Ed.2d 805 (1967). The basis for the instant, assumed exemption for tribal lands was neither briefed nor discussed at oral argument by the parties.

(1967). *See also Strom v. C.I.R.*, 158 F.2d 520 (9th Cir. 1947), *aff'g* 6 T.C. 621 (1946).[7]

Appellants, however, are not to be deterred. Recognizing that the link between their income and tax-exempt Indian land is probably too tenuous to meet the test of precedent in this area, they advance a bold variant on their basic argument. They suggest that we read *Squire* and *Stevens*, not as turning on the construction of a statutory exemption, but rather as standing for the broader proposition that income derived by an Indian from activities which directly benefit other Indians is tax-exempt. They bring their own case within such a rule by pointing both to the benefit which the Tribe obtains in having its timber logged and to that which their Indian employees enjoy through employment.

■ It is true that both *Squire* and *Stevens* contain language to the effect that ambiguities in treaties and statutes are to be resolved in favor of Indians. *See* 351 U.S. at 6–7, 76 S.Ct. 611; 452 F.2d at 744. But it is one thing to say that courts should construe treaties and statutes dealing with Indians liberally, and quite another to say that, based on those same policy considerations which prompted the canon of liberal construction, courts themselves are free to create favorable rules. *See Holt, supra* at

40. *Cf. Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 417 (9th Cir. 1977). We have previously refused to accept such an argument in this context, pointing out that Congress is the body which grants tax exemptions. *See C.I.R. v. Walker*, 326 F.2d 261, 264 (9th Cir. 1964).[8] And,

> "[the Supreme] Court has repeatedly said that tax exemptions are not granted by implication. . . . It has applied that rule to taxing acts affecting Indians as to all others. . . ."

*Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 156, 93 S.Ct. 1267, 1274, 36 L.Ed.2d 114 (1973), *quoting Oklahoma Tax Comm'n v. United States*, 319 U.S. 598, 606–07, 63 S.Ct. 1284, 87 L.Ed. 1612 (1943). *Accord, Agua Caliente Band of Mission Ind. v. County of Riverside*, 442 F.2d 1184, 1187 & n.15 (9th Cir. 1971), *cert. denied*, 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972).

■ The exemption construed in *Squire* and *Stevens* was intended to provide the allottee with unencumbered land when he became competent. *See Squire*, 351 U.S. at 9–10 & n.19, 76 S.Ct. 611. It was not to benefit him simply because he was an Indian,[9] or to benefit Indians generally.[10] Moreover, the efforts of the taxpayer in *C.I.R. v. Walker*, 326 F.2d 261 (9th Cir.

---

7. We are aware that any tax on appellants' income may be said to *indirectly* tax the Tribe itself—depending, of course, on the ability of appellants to shift the burden—and to that extent undercuts the tribal land's assumed tax exemption. Such a nexus does not meet the requirement that the impact be "direct". *Compare Agua Caliente Band of Mission Ind. v. County of Riverside*, 442 F.2d 1184, 1186 (9th Cir. 1971), *cert. denied*, 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972). *Cf. Superintendent of Five Civilized Tribes v. Commissioner of Internal Revenue*, 295 U.S. 418, 421, 55 S.Ct. 820, 79 L.Ed. 1517 (1935) (return from reinvestment of exempt income directly derived from exempt land held taxable), *discussed in Squire*, 351 U.S. at 9, 76 S.Ct. 611.

8. As appellants assert, a policy argument can be made that noncompetent Indians should be exempt from federal taxation on income derived from services performed on the reservation where they live for the benefit of the Tribe, notwithstanding that they were paid by an outside contractor. Such policy considerations,

however, are matters to be determined by the Congress and not by the courts.

9. Although the point was not pressed here, it appears that appellants also argued below that it is "unconstitutional" for the Federal Government to tax the income of Indians. Such a contention is, of course, foreclosed by *Squire* itself. *See* 351 U.S. at 6, 76 S.Ct. 611. There, the Court emphasized the point:

> The Government also relies upon *Choteau v. Burnet*, 283 U.S. 691, 51 S.Ct. 598, 75 L.Ed. 1353, but that case also is not controlling, since it held only that a *competent* Indian, who had unrestricted control over lands and income therefrom, was not exempt from income tax solely because of his status as an Indian.

351 U.S. at 9–10 n.19, 76 S.Ct. at 617 (emphasis in original). *See LaFontaine v. C.I.R.*, 533 F.2d 382 (8th Cir. 1976).

10. *See* notes 7 & 8 *supra*.

1964), who served as Treasurer for his Indian community, surely benefited Indians more clearly and directly than did appellants' logging operations, yet we found Walker's salary to be subject to federal income taxation.

Appellants can point to no treaty or act of Congress that grants an exemption which is applicable to their case. Accordingly, the general rule of taxability controls, and the judgment of the district court must be

AFFIRMED.