Anita Sampson **LEWIS, Appellant,**

v.

**Cecil D. ANDRUS, Secretary of the Interior, Appellee.**

No. C–80–117.

United States District Court, E. D. Washington.

April 24, 1981.

---

* 29 U.S.C. § 440.

Gary G. McGlothlen, Toppenish, Wash., for appellant.

Nancy E. Horgan, Asst. U.S. Atty., Spokane, Wash., for appellee.

## MEMORANDUM OPINION AND ORDER GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT

QUACKENBUSH, District Judge.

### ADMINISTRATIVE PROCEEDINGS

Pursuant to 43 CFR Part 4, Subpart D 4.20 *et. seq.* The United States Department of the Interior conducted a hearing on an application to approve the will of Asmakt Yumpquitat (Millie Sampson), deceased Yakima Allottee 124–2911, Probate No. IP PO 194L 75–225, who died testate on May 17, 1977, at the age of 109. After hearings conducted on February 24 and November 30, 1978, Administrative Law Judge Robert C. Snashall issued an order on March 6, 1979, determining the decedent's heirs in accordance with the terms of a will dated December 28, 1976.

A petition for rehearing, supported by affidavits, was filed by Testatrix's son, Charles Y. Sampson, Sr., alleging new evidence that the Testatrix was unduly influenced into revoking a former will and mak-

ing the December 28, 1976, will which disinherited the petitioner. The ALJ issued an order on May 14, 1979, denying the petition for rehearing, based on the conclusion that the alleged new evidence was insufficient to overcome prior testimony by non-interested parties as to the mental capability of the Testatrix and the lack of undue influence.

Upon the death of Charles Y. Sampson, Sr., on June 19, 1979, the Appellant in the present suit, Anita Sampson Lewis, appealed to the Interior Department Board of Indian Appeals, (IBIA), on behalf of Mr. Sampson's estate. The appeal alleged that the ALJ had committed error in approving the will and also alleged a failure to comply with the Administrative Procedure Act, 5 U.S.C. § 557(c), in that the ALJ's decision did not include the reasons for his findings and conclusions on all material facts. In a decision dated January 31, 1980, 8 IBIA I, the Board affirmed the ALJ's March 6, 1979, order, concluding that the ALJ's findings were "supported by a preponderance of the substantial and probative evidence." 8 IBIA at 5. The Board also rejected the Appellant's APA argument. This decision by the Board represented the final administrative appeal decision for the Department. 43 CFR § 4.1(b)(2).

The Appellant now brings the case to this Court pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331 to obtain judicial review of the final decision of the Secretary determining heirs and approving the will of Asmakt Yumpquitat (Millie Sampson).

## FACTS

Asmakt Yumpquitat (Millie Sampson) died on May 17, 1977 at the approximate age of 109, leaving a purported Last Will and Testament dated December 28, 1976. This Will, which replaced an earlier Will, was submitted for probate before the United States Department of the Interior, Office of Hearings and Appeals. On November 30, 1978 a hearing was held for the purpose of taking evidence on the objections to the Will by the Testatrix's sole surviving child, Charles Y. Sampson, Sr., who was disinherited by the replacement Will.

At the November 30, 1978 hearing, testimony was taken from Julia Hill who prepared the December 28, 1976 Will and Joyce Redthunder and Lehigh John who witnessed the Testatrix's execution of the Will. All three of these witnesses testified that the Testatrix appeared to be competent and was not acting under undue influence at the time the Will was executed. (See Tr. Pgs. 10, 14, 21, 29). Lillian Ferguson who notarized the signatures of the witnesses on the Testatrix's Will, also testified. Her testimony coincided with that of the previous witnesses that the Testatrix did not appear to be under any type of pressure. (Tr. 36, 1.8).

The Petitioner called several witnesses to support his contention that the Testatrix had been unduly influenced. Teresa Pierre testified that on December 12, 1976, the day on which Lena Sampson Sohappy, Testatrix's daughter, died, she went to Lena Sohappy's house at the request of Melvina and Dave Aleck to cook and care for the Testatrix. That she remained with the decedent until December 23, 1976 and that during this period of time the Testatrix was bedridden, physically unable to care for herself, and very upset over the death of her daughter. Teresa Pierre further testified that a number of people, including Melvina Aleck and Helen Totus, frequently asked the Testatrix what she was going to do about her property now that her daughter had died. It was Teresa Pierre's opinion that the Testatrix had been talked into disinheriting Charles Sampson in the December 28, 1976 Will by Melvina Aleck (Tr. 55–58).

The Petitioner also called Charles Sampson and Anita Lewis, the Testatrix's granddaughter. Charles Sampson testified that he had cared for his mother and had always been on good terms with her. (Tr. 65–66). Anita Lewis testified that in January 1977, after the execution of the December 28, 1976 Will, the Testatrix informed her that it was her intention that her land and money pass by Indian Custom and Tradition to her surviving child (Tr. 75, 11.9–14).

On March 6, 1979 an "Order Approving Will and Decree of Distribution" was entered by the Administrative Law Judge. On May 4, 1979 a "Petition for Rehearing" was timely filed by Charles Sampson, Sr. alleging new evidence supported by two affidavits and a third, unsigned document by Teresa Pierre, to the effect that the Testatrix was unduly influenced against her son at the time she executed the December 12, 1976 Will.

The unsigned document by Teresa Pierre stated that while Mrs. Pierre was caring for the Testatrix, she heard Rose Y. Lucy John and Melvina Aleck tell the Testatrix that she should change her Will and not leave any property to her son, Charles Sampson, Sr.

The first affidavit was that of Louie Charles, a longtime acquaintance of the Testatrix. The affidavit stated that in 1972 the Testatrix told Mr. Charles that she would never make a Will and that she wanted her property to pass to her surviving children. The affidavit further stated that Mr. Charles was of the opinion that the Testatrix had been influenced by others in the decision to change her Will.

The other affidavit was that of Louis Charles Kahelemet, the grandson of the Testatrix. The affidavit stated that Melvina Aleck bore a grudge against Charles Sampson, Sr. and that it was Mr. Kahelemet's opinion that Melvina Aleck influenced the Testatrix to change her Will and disinherit her son.

On May 14, 1979, an order was entered denying the Petition for Rehearing. Following this denial, Charles Sampson, Sr., died on June 6, 1979, and an appeal was filed by Anita Sampson Lewis on behalf of the Estate of Charles Y. Sampson, Sr., with the Interior Department Board of Indian Appeals. The Board upheld the decision of the ALJ finding that the evidence presented by the Appellant, including the additional evidence submitted with the Petition for Rehearing, did not support the allegations of the parties.

## DECISION

The primary issue in this case is whether the final decision of the Department of the Interior approving the Will of Asmakt Yumpquitat (Millie Sampson) is supported by substantial evidence on the record as a whole. Before addressing this issue the Court must be satisfied that it has jurisdiction to review the decision of the Secretary. This jurisdictional issue really poses two questions. First, the Court must determine whether it has jurisdiction to even consider the question of reviewability. Then, if such jurisdiction is found to exist, the Court must determine whether the Secretary's decision is reviewable under the particular facts of this case.

Both of the foregoing questions can be answered in the affirmative. 28 U.S.C. § 1331 provides that the district courts have jurisdiction of all civil actions wherein the matter arises under the Constitution, laws or treaties of the United States. The statute further provides that there is no amount in controversy requirement where such action is brought against any officer or employee of the United States in his official capacity. The instant case arises under 25 U.S.C. § 373, the Federal Statute governing the determination of heirship to the restricted estate of an Indian who died testate, and is brought against an employee of the United States acting in his official capacity as Secretary of the Interior. Therefore, under the express language of 28 U.S.C. § 1331, this Court has jurisdiction to determine whether or not the ALJ's decision is reviewable.

In deciding the question of reviewability this Court notes that the Administrative Procedure Act contemplates judicial review of an agency action except to the extent that: (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law. See 5 U.S.C. § 701 *et seq.* The applicable statute in this case is 25 U.S.C. § 373 which deals with the Secretary's control over the distribution of restricted estates of Indians who die testate. Unlike 25 U.S.C. § 372, which relates to the Secretary's determination of the

heirs of Indians who die intestate, there is no language in 25 U.S.C. § 373 which confers unreviewable finality upon a decision of the Secretary approving or disapproving an Indian's Will. Moreover, the Supreme Court has expressly held that 25 U.S.C. § 373 does not preclude judicial review. *Tooahnippah v. Hickel*, 397 U.S. 598, 90 S.Ct. 1316, 25 L.Ed.2d 600 (1969). Taken together, the language of the statute and the *Tooahnippah* decision indicate that review in the present case is proper.

█ The Appellant has raised three issues on review. First, Appellant alleges that the ALJ's Findings and Conclusions were not properly set out in the March 6, 1979 "Order Approving Will and Decree of Distribution" and as a result failed to meet the requirements of the Administrative Procedure Act. 5 U.S.C. § 551 *et seq.* This contention is without merit. Departmental regulations provide that a petition for rehearing provides the ALJ with continuing jurisdiction to modify or vacate his prior decision. 43 CFR § 4.241(c). Therefore, any possible deficiencies in the ALJ's findings in regard to the March 6, 1979 Order were cured by his subsequent findings in the May 14, 1979 Order Denying the Petition for Rehearing. *Wait Radio v. F.N.C.*, 418 F.2d 1153 (D.C.Cir.1969), cited in appellant's brief, is inapposite under the facts of this case.

█ The Appellant next contends that there was not substantial evidence to support the ALJ's March 6, 1979 Order Approving the Will of the decedent. More specifically, the Appellant claims that there was sufficient evidence presented to require a finding that the Will was executed under undue influence and therefore invalid. For undue influence to invalidate a Will, there must be a showing: (1) that the decedent was susceptible to the domination of another, (2) that the person allegedly exerting the influence was capable of controlling the mind and the actions of the decedent, (3) that such person at the time of the testamentary act, did exert influence upon the decedent of a nature calculated to induce or coerce the decedent to make a will contrary to her own desires; and (4) that the Will is contrary to such desires. *Estate of Hubah or Mrs. Sam Gray*, 2 IBIA 88 (Oct. 31, 1973). If any one of these elements is missing, the allegation of undue influence cannot be sustained. *Estate of Louis B. Fronkier*, IA–T–24 (Feb. 24, 1970). Moreover, the burden of proof of establishing each of these elements is on the petitioner. *Estate of Ammon Pubiger*, IA–859 (Apr. 7, 1966).

█ In the instant case the ALJ concluded that the evidence presented by the Appellant failed to establish that the 1976 Will was executed under undue influence. In reaching this decision the ALJ placed great weight on the testimony of the neutral employees of the Bureau of Indian Affairs. These witnesses were present during the drafting of the Will, and their testimony is emphatic that the Testatrix did not appear to be under any undue influence; she was alert, aware of what her assets were, and knew to whom she wished to leave them. Moreover, none of the persons alleged to have asserted undue influence were present at the time the Will was executed and there was no evidence to establish that the Will was contrary to the desires of the Testatrix at that time. Under these circumstances the decision of the ALJ is in accord with the preponderance of the substantial evidence, and will not be disturbed by this Court. See *Estate of Roland Loyd (Mobeadlemah) Botone*, 7 IBIA 177, 180 (1979); *United States v. Del DeRosier*, 8 IBLA 407, 79 I.D. 709 (1972).

█ The final claim made by the Appellant is that the Petition for Rehearing should have been granted on the basis of the three additional affidavits submitted after the original hearing. This Court disagrees. Of the three affidavits offered in support of the Petition for Rehearing to show undue influence upon the Testatrix, two were duplicative of the evidence taken at the original hearing, were conclusionary, and only opinions. The third, and most explicit affidavit, was that of Teresa Pierre who had previously testified at the original hearing. This affidavit was unsigned and the ALJ specifically stated that he felt that

Mrs. Pierre lacked credibility based upon her live testimony at the original hearing. Therefore, the three affidavits taken together add little, if anything, to the evidence considered at the original hearing. An ALJ may properly deny a Petition for Rehearing under these circumstances. *Estate of Rosalind No Rar (L. S. Buffalo or Brooks) Brown*, IA–T–2 (Mar. 31, 1967).

On the basis of the foregoing, this Court AFFIRMS the decision of the ALJ, GRANTS the Appellee's Motion for Summary Judgment, and Dismisses the Petition for Review with prejudice.