845 F.2d 206
 61 A.F.T.R.2d 88-1106, 56 USLW 2647, 88-1
USTC P 9305
 Belinda ANDERSON, Plaintiff,
and
Kenneth Anderson; Geneva Anderson; Denny Anderson; Asa
Begaye; Lewana Begaye; Ilee H. Castillo; Alfreda Catha;
Robert Faria; Debra Faria; Billy Frye; Margaret Henry;
Daisy Mike; Max Patrick; Larry Pete; Delores Pete;
Angela Sanchez; Donald Shearer; Gloria Shearer; Elaine
Wilson; Marie Wilson; Gloria Yazzie, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 87-2120.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 12, 1988.
Decided April 25, 1988.
 
 Peter J. Sferrazza, Reno, Nev., for plaintiffs-appellants.
 Michael J. Roach, Dept. of Justice, Washington, D.C., for defendant-appellee.
 Appeal from the United States District Court for the District of Nevada.
 Before WRIGHT, CHOY and NOONAN, Circuit Judges.
 EUGENE A. WRIGHT, Senior Circuit Judge:
 
 
 1
 This appeal presents a question of first impression: Are an Indian tribe's distributions of accumulated rents from unallotted tribal trust land taxable income to tribal members who receive the payments? The district court concluded that because the distributions are not exempt specifically by statute or treaty and taxing them does not implicate an encumbrance on any property interest, they are taxable income. We affirm.
 
 BACKGROUND
 
 2
 Anderson and the other appellants are members of the Paiute Tribe, a federally recognized tribe on a reservation in Las Vegas. Part of the reservation land is held in trust by the federal government for the benefit of the tribe. This trust land is not and never will be allotted. The tribe leases a portion of this unallotted trust land to King, a non-Indian, who operates a smoke shop.
 
 
 3
 In 1980, the tribe distributed accumulated rents from the smoke shop lease to the appellants. They reported the $34,482 distributions as income for 1980 and filed amended returns claiming that the distributions were exempt. After the Commissioner denied their claims, they sued in federal court for a refund.
 
 
 4
 The district court ruled for the government on the pleadings under Fed.R.Civ.P. 12(c). It concluded that, because the distributions were not exempt from taxation by treaty or statute, the Commissioner properly denied the refund. Anderson and the others appeal.
 
 ANALYSIS
 
 5
 Appellant challenges only the court's conclusion of law. Although he concedes that Squire v. Capoeman, 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883 (1955) does not control our decision, he contends that its reasoning should apply by analogy to exempt the distributions.
 
 
 6
 In Capoeman, the Supreme Court considered whether an Indian's income from the government's sale of timber on his allotted trust land was subject to capital gains tax. The court noted first that "Indians are citizens and that in the ordinary affairs of life, not governed by treaties or remedial legislation, they are subject to the payment of income taxes as are other citizens." Capoeman, 351 U.S. at 6, 76 S.Ct. at 615. It continued, "to be valid, exemptions to tax laws should be clearly expressed ... [but] '[d]oubtful expressions are to be resolved in favor of the [tribes and their members." Id. at 6-7, 76 S.Ct. at 615. (Citations omitted).
 
 
 7
 The Court found an expressed exemption for allotted lands and "income derived directly therefrom" in sections 348 and 349 of the General Allotment Act, 25 U.S.C. Sec. 331 et seq. Id. at 6-9, 614-16. Section 348 provides that at the end of the trust period the United States will convey the allotment to the Indian owner "free of all charge or incumbrance whatsoever." Section 349 provides that the Secretary of the Interior may issue a patent in fee simple to an allottee and that "all restrictions as to sale, incumbrance, or taxation of said land shall be removed." The Court construed these sections to mean that "until such time as the patent is issued, the allotment shall be free from all taxes, both those in being and those which might in the future be enacted." Id. at 8, 76 S.Ct. at 616.
 
 
 8
 The Court reasoned that to serve the purposes of the General Allotment Act, "it is necessary to preserve the trust and income derived directly therefrom." Id. at 9, 76 S.Ct. at 616. The purpose of the Act was to educate Indians about private property and foster "independence" during the trust period. See Choteau v. Burnet, 283 U.S. 691, 694, 51 S.Ct. 598, 600, 75 L.Ed. 1353 (1931). At the end of the trust period, restrictions on the land would be lifted and Indian allottees would be able to compete on equal terms in society and the economy. Id. The Court concluded that taxing allotments and directly derived income would hinder the Indians' progress toward material independence and disadvantage them in competing with others. Capoeman, 351 U.S. at 10, 76 S.Ct. at 617.
 
 
 9
 Courts have applied the Capoeman exemption to protect the Indians' statutory rights to take certain property interests free of encumbrance. See, e.g., Stevens v. Commissioner, 452 F.2d 741 (9th Cir.1971) and Big Eagle v. United States, 300 F.2d 765, 156 Ct.Cl. 665 (1962). When that right is not implicated, Capoeman does not apply. United States v. Anderson, 625 F.2d 910, 914 (9th Cir.1980), cert. denied, 450 U.S. 920, 101 S.Ct. 1367, 67 L.Ed.2d 347 (1981):
 
 
 10
 Capoeman 's point was that if an Indian's allotted land (or the income directly derived from it) was taxed, and the tax was not paid, the resulting tax lien on the land would make it impossible to receive the land free of 'incumbrance' at the end of the trust period. The purpose of Secs. [348 and 349] was 'to provide the allottee with unencumbered land when he became competent. It was not to benefit him simply because he was an Indian or to benefit Indians generally.'
 
 
 11
 (Citations omitted).
 
 
 12
 Anderson relies on our decision in Stevens v. Commissioner, 452 F.2d 741 (9th Cir.1971) for his claim that the Capoeman exemption applies to income directly derived from tribal trust land. In that case, Stevens owned several allotments, one he received from the government, one he received from his mother, and others the Secretary of the Interior purchased for him with Stevens' funds. Except for his original allotment, Stevens' allotments were not expressly subject to the "free of incumbrance" language.
 
 
 13
 Stevens farmed and ranched his own allotments and land leased from the tribe and relatives. We held that the Capoeman exemption applied to all of Stevens' allotments and that income derived directly from them was not taxable.
 
 
 14
 The Stevens opinion does not help Anderson. Our decision turned on a finding that, even though Stevens' allotments were not specifically exempted, Congress intended to exempt from taxation all allotments and directly derived income.
 
 
 15
 Congress had made clear, by two legislative acts, that all future allotments would be subject to the terms of the General Allotment Act and would carry the same rights and privileges. Id. at 744-45. In light of the "long-standing Congressional policy of treating Indians equally, except where differences in tribal circumstances justify special legislation," we concluded that those statutes indicated that Congress intended the terms of the General Allotment Act to apply to all allotments. Id. at 745.
 
 
 16
 In addition, we gave great weight to the Department of the Interior's position that Congress clearly intended to extend the General Allotment Act to all allotments and that allotments granted under the Act did not differ from those acquired under the Indian Reorganization Act. After considering the statutes and their application by the Department of the Interior, we concluded that Congress intended that all allotments were exempt from taxation under Capoeman.
 
 
 17
 Anderson has not shown that Congress intended to exempt the distributions. Nor has he shown that his interest in the distributions is analogous to a right to receive property free of encumbrance recognized in Capoeman and Stevens. He argues only that the tax is "illogical" and undermines the federal policy of fostering economic independence. That may be true. But these arguments should be made to Congress. Until Congress establishes that this income is exempt, we must hold that it is subject to taxation. See Anderson, 625 F.2d at 913; and Fry v. United States, 557 F.2d 646, 649 (9th Cir.1977), cert. denied, 434 U.S. 1011, 98 S.Ct. 722, 54 L.Ed.2d 754 (1978).
 
 
 18
 Anderson argues also that because the rents received by the tribe are not taxed, they should not be taxed when distributed to tribal members. We have rejected this argument before. Fry, 557 F.2d at 648; Commissioner v. Walker, 326 F.2d 261, 264 (9th Cir.1964).
 
 
 19
 The judgment of the district court is AFFIRMED.